Stephen GASKIN et al.

v.

STATE of Tennessee.

Supreme Court of Tennessee.

Feb. 5, 1973.

Stephen Gaskin, Dane Dexter Culbertson, Wilbur Jordan, Brandon Lerda, pro se.

David M. Pack, Atty. Gen., William B. Hubbard, Asst. Atty. Gen., Nashville, J. Alonzo Bates, Dist. Atty. Gen., William D. Young, Jr., Asst. Dist. Atty. Gen., Centerville, for the state.

## OPINION

McCANLESS, Justice.

Stephen Gaskin, Dane Dexter Culbertson, Wilbur Jordan, and Brandon Lerda all were convicted in the Circuit Court of Lewis County of the manufacture of marihuana in violation of Chapter 163 of the Public Acts of 1971, now codified as Sections 52–1409 to 52–1448, inclusive, Tennessee Code Annotated, known as the Tennessee Drug Control Law. Gaskin and Culbertson each received a sentence of from one to three years and Jordan and Lerda each a sentence of one year in the penitentiary.

Section 52–1409(m), T.C.A., defines "manufacture" as the "production, prepara-' tion, propagation, compounding, conversion or processing of a controlled substance". Section 52–1422, T.C.A., includes marihuana as a controlled substance in Schedule VI. Section 52–1432(a)(1)(F) provides that it is unlawful, unless authorized by the provisions of the statute, "for any person to manufacture, deliver, sell, or possess with intent to manufacture, deliver or sell, a controlled substance" and that such person "is guilty of a felony and upon convic-

tion shall be imprisoned for not less than one (1) year nor more than five (5) years and in addition thereto may be fined not more than three thousand dollars ($3,000)."

None of the four defendants has shown that he was authorized to manufacture marihuana.

Upon their motion for a new trial being overruled the defendants perfected their appeal to the Court of Criminal Appeals, but it appearing from their assignments of error that "the sole and single question for determination" on appeal is the constitutionality of Chapter 163 of the Public Acts of 1971, that court declined to take jurisdiction and transferred it to the Supreme Court.

The defendants were represented in the Circuit Court by competent retained counsel, but they perfected their appeal and filed their assignments of error and brief *pro se*. The defendant, Gaskin, made an oral argument at the bar of this Court on behalf of all the defendants.

None of the defendants has suggested that he is indigent and none contends that he did not, in fact, manufacture marihuana. Their effort to obtain a reversal of the Circuit Court's judgment of conviction is based altogether on their insistence that Chapter 163 of the Public Acts of 1971, as applied to them, violates rights guaranteed them under the Constitution of the United States.

The insistences of the defendants as presented by their four assignments of error are:

(1) The statute prohibiting the cultivation of marihuana unconstitutionally interferes with their right to the free exercise of religion guaranteed them by the First Amendment to the Constitution of the United States;

(2) The statute unconstitutionally interferes with their right of privacy guaranteed them by the Ninth Amendment to the Constitution of the United States;

(3) The punishment for the possession and manufacture of marihuana is cruel and unusual punishment, protected against by the Eighth Amendment to the Constitution of the United States; and

(4) The classification of marihuana with addictive and disabling drugs is an irrational classification, not reasonably related to public health, safety, and morals, and is too broad in its restrictions and violative of the defendants' rights under the Equal Protection and Due Process clauses of the Fourteenth Amendment to the Constitution of the United States.

Stephen Gaskin is the leader and teacher of a party of followers that in August of 1971 numbered from 350 to 360 persons according to his testimony. They left San Francisco on October 12, 1970, in a caravan composed largely, if not entirely, of buses. They spent the winter making their way across the country toward Tennessee. Gaskin had given religious lectures in San Francisco for several years and from time to time as the caravan moved eastward he gave lectures at various educational institutions. He had been a teacher of English and creative writing at San Francisco State College.

Upon their arrival in Middle Tennessee the party at first camped on land of the United States Corps of Engineers, near Donelson. They moved to Lewis County to a tract owned by a Mrs. Martin of Nashville who allowed them to use it. They spent the summer of 1971 on this property.

While they were on the Martin land in Lewis County local and state officers found marihuana plants under cultivation on the property. On August 31, 1971, they made a raid, cut and confiscated the marihuana and arrested Gaskin and the other defendants, who were members of a committee having charge of the production of marihuana. The trial and convictions resulted from this raid.

The defendant, Gaskin, testified that most of his adult followers used marihuana in their religious practices. He said:

"Well we found that its a way to meditation that helps us to pray and to understand our Creator and also it helps us to see the truth in our personal problems and in our interactions with each other and that when we have prayer we try to get as high as we can so that we all can have the best vision we can so we can see what's going on; its a meditation thing, its well substantiated by people in religion that the experience that you can have with marihuana is identical to the religious experience that you can have spontaneously without it."

(1) The defendants contend that Chapter 163 of the Public Acts of 1971 is unconstitutional as it has been applied to them in that it interferes with the free exercise of their religious beliefs guaranteed them by the First and Fourteenth Amendments to the Constitution of the United States.

In Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244, the court affirmed the conviction of one tried for the statutory crime of bigamy. The defendant contended that the statute was unconstitutional because it interfered with the exercise of religion. Rejecting that contention the court said:

" . . . Laws are made for the government of actions, and while they cannot interfere with mere religious belief and opinions, they may with practices. Suppose one believed that human sacrifices were a necessary part of religious worship, would it be seriously contended that the civil government under which he lived could not interfere to prevent a sacrifice? Or if a wife religiously believed it was her duty to burn herself upon the funeral pile of her dead husband, would it be beyond the power of the civil government to prevent her carrying her belief into practice?

"So here, as a law of the organization of society under the exclusive dominion of the United States, it is provided that plural marriages shall not be allowed. Can a man excuse his practices to the contrary because of his religious belief? To permit this would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself. Government could exist only in name under such circumstances."

Harden et al. v. State, 188 Tenn. 17, 216 S.W.2d 708 [1949], dealt with the constitutionality of Chapter 89 of the Public Acts of 1947, which made it "unlawful for any person, or persons, to display, exhibit, handle or use any poisonous or dangerous snake or reptile in such manner as to endanger the life or health of any person."

The defendants in that case had been convicted of handling poisonous snakes during the course of their religious services. They insisted that because of the constitutional guarantees of the free exercise of religion, the act could not be applied so as to prevent their handling of poisonous snakes in their services. The Court rejected this insistence and affirmed the convictions. In the opinion by Mr. Justice Tomlinson, the Court cited Reynolds v. United States, supra, and Davis v. Beason, 133 U.S. 333, 10 S.Ct. 299, 33 L. Ed. 637 [1890]. From the later opinion the following, which refers to the first amendment to the federal constitution, is quoted:

"It was never intended or supposed that the amendment could be invoked as a protection against legislation for the punishment of acts inimical to the peace, good order, and morals of society."

The argument of the defendants that the statute as applied to them violates their rights under the First and Fourteenth Amendments to the Constitution of the United States is without merit.

■ (2) The defendants next contend that the statute unconstitutionally interferes with their right of privacy guaranteed under the Ninth Amendment. The amendment here invoked simply provides that "the enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people." The defendants insist that the purpose of this amendment is to protect other rights than those enumerated in the Constitution and that the "possession and cultivation of marihuana for religious purposes are within these rights."

We cannot agree that this argument is sound.

■ (3) The punishment for the manufacture and possession of marihuana, the defendants insist, is cruel and unusual punishment and violative of the Eighth Amendment to the Constitution of the United States.

The punishment prescribed by the statute is imprisonment for from one to five years and fines not exceeding $3,000.00. In this case the jury imposed no fines and sentences of imprisonment in excess of the maximum. We do not consider that either the sentences provided in the statute or as imposed by the jury and the court were excessive and in violation of the constitutional rights of any of the defendants. Hardin v. State, 210 Tenn. 116, 356 S.W.2d 595 [1962].

■ (4) The defendants contend finally that the classification of marihuana with addictive and disabling drugs is an irrational classification, not reasonably related to public health, safety and morals, and is too broad in its restrictions and violative of the Equal Protection and Due Process clauses of the Fourteenth Amendment to the Constitution of the United States.

We observe first that the defendants have made no effort to prove that marihuana is not a harmful substance which ought to be classified in the law in some

manner other than as a dangerous drug or harmful substance. The General Assembly of Tennessee presumably acted in the exercise of sound discretion and with adequate knowledge when it dealt with marihuana in Chapter 163 of the Public Acts of 1971. In enacting the statute before us the General Assembly acted in the exercise of its police power to preserve the safety and morals of the public. Motlow v. State, 125 Tenn. 547, 145 S.W. 177, L.R.A.1916F 177 [1911]; Arutanoff v. Metropolitan Government, 223 Tenn. 535, 448 S.W.2d 408 [1969].

The assignments of error are without merit. We overrule them and affirm the judgment of conviction of the Circuit Court.

DYER, C. J., CHATTIN and HUMPHREYS, JJ., and WILSON, Special Judge, concur.