PEOPLE v RIDDLE

1. DRUGS AND NARCOTICS—CANNABIS SATIVA—CONTROLLED SUB-
STANCES ACT OF 1971—STATUTES.

*Cannabis sativa* means all *Cannabis* for purposes of the Con-
trolled Substances Act of 1971 and this includes *Cannabis
sativa, Cannabis indica,* and *Cannabis ruderalis* (MCLA 335.301
*et seq.).*

2. DRUGS AND NARCOTICS—WORDS AND PHRASES—MARIHUANA—STAT-
UTES—CONSTRUCTION.

The Court of Appeals in order to fully realize the intent of the
Legislature may seriously consider the decisions of sister juris-
dictions adopting a definition of marihuana similar to that
found in the Controlled Substances Act of 1971 (MCLA 335.301
*et seq.).*

3. DRUGS AND NARCOTICS—MARIHUANA—DEFINITIONS—CONTROLLED
SUBSTANCES ACT—UNIFORM CONTROLLED SUBSTANCES ACT—
COMPREHENSIVE DRUG ABUSE PREVENTION AND CONTROL ACT—
STATUTES.

Construction of the statutory definition of marihuana to include
*Cannabis sativa, Cannabis indica,* and *Cannabis ruderalis* is
proper because a narrow reading of the definition would render
the marihuana regulation ineffective, the chemical ingredient
producing the euphoric effects is found in all the so-called
species of marihuana, at the time the Legislature enacted the
Controlled Substances Act of 1971 there was ample authority
for the position that there was but a single species of the
marihuana plant, the 1971 Act was based upon the Federal
Uniform Controlled Substances Act which included an identical
definition of marihuana, and Congress also used the definition
of marihuana as all parts of the plant in the comprehensive
Drug Abuse Prevention and Control Act of 1970 (21 USC 802;
MCLA 335.301 *et seq.).*

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 2, 7, 17, 19.
[4] 5 Am Jur 2d, Appeal and Error § 545.
[5] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 17.

4. APPEAL AND ERROR—DRUGS AND NARCOTICS—MARIHUANA—MICRO-
   SCOPIC EXAMINATION—DEQUENOIS-LAVINE TEST—FAILURE TO OB-
   JECT—PRESERVING QUESTION.

   The question of whether the microscopic examination and the
   Dequenois-Lavine color test are sufficiently reliable to identify
   the controlled substance marihuana was not preserved for
   appellate review where no objection to the test was raised
   during trial.

5. DRUGS AND NARCOTICS—MARIHUANA—POSSESSION—USE—DELIVERY
   —EQUAL PROTECTION—DUE PROCESS.

   The statute prohibiting possession, use, and delivery of mari-
   huana does not violate equal protection and due process (MCLA
   335.341).

Appeal from Benzie, William R. Peterson, J.
Submitted October 16, 1975, at Grand Rapids.
(Docket No. 20007.) Decided November 12, 1975.

Gary W. Riddle was convicted of delivery of
marihuana. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *John D. Berlin,*
Prosecuting Attorney, *Prosecuting Attorneys Ap-
pellate Service* (by *Edward R. Wilson,* Director,
and *Lee Wm. Atkinson,* Special Assistant Attorney
General), for the people.

*Steven L. Schwartz,* Assistant State Appellate
Defender, for defendant.

Before: ALLEN, P. J., and DANHOF and M. F.
CAVANAGH, JJ.

ALLEN, P. J. One of numerous issues raised on
appeal has never been decided by an appellate
court in Michigan. What was the intent of the
Legislature in the Controlled Substances Act of
1971,[1] when it defined marihuana as "all parts of

---

[1] 1971 PA 196; MCLA 335.301 *et seq.;* MSA 18.1070(1) *et seq.*

the plant Cannabis sativa L."? MCLA 335.305(3); MSA 18.1070(5)(3).

Defendant was arrested and charged with delivery of marihuana, contrary to MCLA 335.341(1)(c); MSA 18.1070(41)(1)(c). At his bench trial, defendant stipulated he had sold a substance to an undercover policeman, and conceded the substance's chain of possession to the police laboratory. The prosecution, in its case in chief, called a state forensic chemist as the only prosecution witness. Based upon microscopic examination and the results of the Dequenois-Lavine test, this expert identified the substance as marihuana. She admitted on cross-examination to having heard of the three species theory of *Cannabis*, but testified that it was all *Cannabis sativa* to her.

The defense theory was there are at least three species of marihuana, only *Cannabis sativa L.* is a controlled substance within the Controlled Substances Act of 1971, and hence, the state failed to prove beyond a reasonable doubt that the substance delivered was marihuana within the meaning of the Act. To support the view that marihuana is polytypic, the defense called botanist Dr. Monroe R. Birdsey who testified that in his opinion there exist at least three species of marihuana: *Cannabis sativa, Cannabis indica,* and *Cannabis ruderalis.* He cited other authority for his position.

In rebuttal, the prosecution called Dr. Arthur Cronquist of the New York Botanical Gardens, who testified that he among others viewed *Cannabis* as a single species, and that the other so-called species are but varieties of *Cannabis sativa.*

In finding defendant guilty as charged, the trial court stated it "tended to agree" with the evidence that marihuana is monotypic or a single species. However, it is evident that the lower court re-

garded the taxonomic dispute over the number of species of little moment. Relying on Federal cases facing the same question with respect to an identical definition in the Federal drug law, the lower court ruled that in 1971 the Legislature intended to adopt the scientific view then prevailing that marihuana was monotypic, and therefore, *Cannabis sativa* means all *Cannabis* for purposes of the 1971 Act. Defendant was subsequently sentenced to 90 days in jail and 3 years probation.

Defendant contends that the trial court improperly derogated from the intent of the Legislature when it determined *Cannabis sativa* means all *Cannabis,* essentially because there is no room for judicial construction of the technical and exact term *Cannabis sativa,* a penal statute must be strictly construed, and Federal cases construing Federal law are inappropriate as a basis for determining the intent of the state Legislature.

We are compelled to reject the contention of defendant for various reasons. First, acceptance of defendant's narrow reading of the definition would, as a practical matter, render marihuana regulation ineffective. The record shows there are currently no methods for distinguishing *Cannabis sativa* from other so-called species or varieties once the marihuana plant is chopped up. Unless the culprit is caught with the plant itself, convictions would appear unattainable, since the prosecution would be unable to present evidence specifically identifying the substance as *Cannabis sativa.*

The record also indicates that the chemical ingredient[2] producing the euphoric effects is found in all the so-called species of marihuana. Defendant

---

[2] The toxic ingredient common to the plant is tetrahydrocannabinol, or THC. *United States v Walton,* 168 US App DC 305; 514 F2d 201 (1975), *Cassady v Wheeler,* 224 NW2d 649, 654 (Iowa 1974).

would have us hold that the Legislature intended to prohibit only one form of marihuana which is distinguishable from others, if at all, by its morphological characteristics. Moreover, under this approach, each time a taxonomist makes a judgment and adds another species to the marihuana plant the object of the law would be further thwarted. The Court cannot subscribe to such self-defeating legislative intent. We believe that the Controlled Substances Act of 1971 was not intended to serve as a textbook on botany and that if the Legislature believed that its definition of marihuana covered all forms of marijuana containing the hallucinogenic or euphoric chemical common in all so-called species or varieties of the plant, it is irrelevant for the purpose of the Act whether plant taxonomists recognize one, three, or numerous species.[3]

The following reasons add support to our conclusion that in 1971 the Legislature believed marihuana was monotypic, and that its definition was intended to include all *Cannabis* plants producing a "high". Initially, at the time the Legislature enacted the Controlled Substances Act of 1971, there was ample judicial, as well as scientific authority, for the proposition that there was but a single species of the marijuana plant, to wit, *Cannabis sativa.* See *Leary v United States,* 395 US 6, 50; 89 S Ct 1532, 1555; 23 L Ed 2d 57, 90 (1969), *United States v Moore,* 330 F Supp 684 (ED Pa, 1970), *aff'd* 446 F2d 448 (CA 3, 1971), *cert denied,* 406 US 909; 92 S Ct 1617; 31 L Ed 2d 820 (1972), *Martinez v People,* 160 Colo 333; 417 P2d 485 (1966), *State v Alley,* 263 A2d 66 (Me, 1970), *State*

---

[3] "The issue is not whether marihuana is monotypic or polytypic but what Congress means when it used the term 'Cannabis sativa L.' ". *United States v Honneus,* 508 F2d 566, 575 (CA 1, 1974).

*v Romero,* 74 NM 642; 397 P2d 26 (1964), *State v Hall,* 41 Wash 2d 446; 249 P2d 769 (1952).

Moreover, our 1971 drug legislation is based upon the Uniform Controlled Substances Act[4] approved by the Uniform Conference of Commissioners of State Laws in 1970,[5] and which included an identical definition of marihuana. Congress also used the definition of marijuana as all parts of the plant *Cannabis sativa L.,* in the Comprehensive Drug Abuse Prevention and Control Act of 1970.[6] In rejecting an argument quite similar to instant defendant's, the Supreme Court of Iowa set forth the intent of the Commissioners of State Laws respecting the Uniform Controlled Substances Act:

"When the Uniform Controlled Substances Act was recommended to the states for adoption in 1970, the commissioners said:

" 'The Uniform Controlled Substances Act is designed to supplant the Uniform Narcotic Drug Act, adopted by the National Conference of Commissioners on Uniform State Laws in 1933, and the Model State Drug Abuse Control Act, relating to depressant, stimulant, and hallucinogenic drugs, promulgated in 1966. With the enactment of the new Federal narcotic and dangerous drug law * * * it is necessary that the States update and revise their narcotic, marihuana, and dangerous drug laws.

" 'This Uniform Act was drafted to achieve uniformity between the laws of the several States and those of the Federal government. It has been designed to complement the new Federal narcotic and dangerous drug legislation and provide an interlocking trellis of Federal State law to enable government at all levels to control more effectively the drug abuse problem.' Handbook of the National Conference of Commissioners on Uniform

---

[4] *See* 52 Mich S B J 617 (1973).

[5] *Cassady v Wheeler, supra,* at 651.

[6] 84 Stat 1242 (1970); 21 USC § 802 (15).

State Laws, supra, at 223." *Cassady v Wheeler,* 224 NW2d 649, 651–652 (Iowa, 1974).

It thus appears germane for this Court to seriously consider the decisions of Federal courts, as well as court decisions of sister jurisdictions adopting a similar definition of marihuana, in order to fully realize the intent of our own Legislature.

We choose to follow the overwhelming number of courts which have confronted and rejected the argument that a definition of marihuana as *Cannabis sativa* within controlled substance legislation necessarily excludes other so-called species of *Cannabis* (marihuana), even if the substance contains the chemical giving the euphoric effect. *United States v Walton,* 168 US App DC 305; 514 F2d 201 (1975), *United States v Honneus,* 508 F2d 566 (CA 1, 1974), *United States v Kinsey,* 505 F2d 1354 (CA 2, 1974), *United States v Gaines,* 489 F2d 690 (CA 5, 1974), *United States v Rothberg,* 480 F2d 534 (CA 2, 1973), *People v Holcomb,* — Colo —; 532 P2d 45 (1975), *Cassady v Wheeler, supra, Crowley v State,* 25 Md App 417; 334 A2d 557 (1975), *State v Allison,* 466 SW2d 712 (Mo, 1971), *State v Parker,* 9 Wash App 970; 515 P2d 1307 (1973), *State v Wind,* 60 Wis 2d 267; 208 NW2d 357 (1973).

For reasons already given, and for those reasons set forth in *United States v Walton,* 168 US App DC 305; 514 F2d 201 (1975),[7] we affirm the lower

---

[7] The Court in *Walton* assumed that more than one species of marihuana exist. Nonetheless, it found Congress never meant to prohibit distribution, possession, etc., of but one species. The Court ruled that Congress intended to include all parts of marihuana within the proscription which contain "THC", the chemical producing the euphoric effects. Otherwise, the definition would raise serious equal protection difficulties. Moreover, Congress could not be said to have enacted a law "violations of which could not be proven on the basis of present knowledge" owing to lack of a scientific method to distinguish the species in chopped up form. This reason would lead to due process problems because the group of citizens to whom the law is addressed

court's construction of the statutory definition of marihuana.

Defendant next claims the tests used by the crime laboratory expert—microscopic examination and the Dequenois-Lavine color test—are not sufficiently reliable to identify the controlled substance marihuana. The record shows counsel for defendant voiced no objection to the test during trial. The question thus has not been preserved for appellate review. *People v Smith,* 58 Mich App 76; 227 NW2d 233 (1975), *People v Alexander,* 56 Mich App 400; 223 NW2d 750 (1974).

Defendant's final contentions that the statute prohibiting possession, use and delivery of marihuana violates equal protection and due process are without substance. *People v Alexander,* 56 Mich App 400; 223 NW2d 750 (1974).

Affirmed.

---

would be unable to discern if they were violating the law. The Court reasoned further that the principle of strict statutory construction was inapplicable to the definition involved, since there was no ambiguity in use of term *Cannabis sativa.* It concluded that "[w]hile Congress with the wisdom of hindsight could have been more clear in its definition of marijuana, we can discover no significant doubt about Congress' purpose in proscribing the distribution of marijuana". 168 US App DC at 309; 514 F2d at 205.