STATE of Minnesota, Respondent,

v.

**Paul VAIL, a.k.a. Boston Paul Vail, Appellant.**

**No. 47427.**

Supreme Court of Minnesota.

Jan. 12, 1979.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., Gary Hansen, Sp. Asst. Atty. Gen., St. Paul, DeWayne Mattson, County Atty., Rochester, for respondent.

James H. Manahan, Mankato, Marc Kurzman, St. Paul, for appellant.

Heard before OTIS, ROGOSHESKE, TODD and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

This opinion is substituted for the opinion filed on October 20, 1978, which is hereby withdrawn. Except as indicated in this opinion, the petition for rehearing is denied.

This is an appeal from a judgment of the district court of Olmsted County finding defendant, Boston Paul Vail, guilty of the sale and possession of a controlled substance, marijuana. The defendant challenges the sufficiency of the evidence identifying the seized contraband as a Schedule I controlled substance, and generally challenges, on equal protection grounds, the classification of marijuana in Schedule I.[1] We find no such constitutional infirmity in the classification of marijuana as a Schedule I controlled substance; but, because the evidence considered by the trial court was insufficient to support the verdict, we reverse and order judgment of acquittal.

The essential facts of the transaction leading to appellant's arrest were not disputed and can be simply stated: In January 1976, agent Gregory Sickler of the Minnesota Bureau of Criminal Apprehension (hereafter "M.B.C.A.") contacted Mark Rosasco to arrange the purchase of a quantity of marijuana. Rosasco, in turn, agreed to contact a third party, whom he identified only as "Paul." After a series of negotiations among the parties, it was agreed that Rosasco would purchase approximately 225 pounds of marijuana from "Paul" and immediately transport and resell it to agent Sickler. On February 2, 1976, the transaction was carried out, and Rosasco was arrested during the sale to Sickler.[2] Rosasco declined to lead M.B.C.A. agents to his supplier at the time of his arrest, but did identify the defendant as the supplier.

Rosasco's testimony at trial was corroborated by records of telephone calls between defendant and himself; by testimony of M.B.C.A. agents Harold Holden and Richard Stutz and Wabasha County Sheriff Roger Meurer, who were maintaining aerial and ground surveillance of Rosasco's movements on the day of the transactions; and by testimony of Thomas Best, who encountered defendant immediately after his transaction with Rosasco and was told by the defendant that he had left 225 pounds of marijuana in the trunk of Rosasco's car.

On May 10, the defendant was arrested pursuant to a criminal complaint charging him with the sale and delivery of a controlled substance. Defendant moved to dismiss the complaint on July 26, 1976, on the

---

1. Minn.St. 152.02, subd. 2(3).

2. Rosasco entered a plea of guilty to the charge of attempted possession of a controlled substance, and cooperated in the prosecution of the defendant.

grounds that the classification of marijuana as a Schedule I controlled substance was unreasonable, arbitrary, and without rational relationship to a permissible state objective. The motion was heard September 23, 1976, and subsequently denied.

Defendant executed a written waiver of his right to a jury trial, and the matter was tried to the court. In addition to the facts set out above, the court heard expert testimony from Anne Rummel, a chemist with the Minnesota Bureau of Criminal Apprehension, and Dr. Marc G. Kurzman, who has extensive training in pharmacology, botany, and chemistry. Rummel concluded on the basis of the microscopic, the Duquenois-Levine, and the thin layer chromatography tests that the substance involved was marijuana. She also testified that as far as she knew, the genus, Cannabis, was monotypic. Professor Kurzman's testimony challenged the specificity of the three standard tests and supported a finding that the genus Cannabis was polytypic. On December 7, 1976, the trial court filed findings of fact, conclusions of law, and determination of guilt, together with a memorandum which incorporated by reference the following determinations:

1. Cannabis is polytypic, not monotypic, or at least doubts about the matter must be resolved in favor of the defendant. The state must, therefore, prove that the substance involved was *Cannabis sativa L.,* as distinguished from *Cannabis ruderalis* or *Cannabis indica.*

2. The Duquenois-Levine test and thin layer chromatography are only screening tests not adequately specific to identify marijuana.

3. Microscopic analysis, when combined with gas chromatography-mass spectroscopy, is capable of identifying marijuana beyond a reasonable doubt, but that test was not used in this case.

4. The scientific tests used, while not determinative, are highly probative. When

coupled with the defendant's representations, the quantity and price of the sale, and the assumed sophistication of the seller in identifying the product, the tests and practical inferences satisfy the state's burden of proof.

Defendant's appeal raises two primary issues: whether the evidence was sufficient to establish the identity of the substance seized, and whether Minnesota's controlled substance classification scheme violates constitutional equal protection guarantees. The first issue has two parts: the precise "identity" which must be established, and the adequacy of the scientific and inferential evidence introduced to that end.

1. The multiple species question.

The issue of the sufficiency of the evidence to identify the contraband as a controlled substance initially requires a determination of the breadth of the statutory definition: " 'Marijuana' means all parts of the plant Cannabis sativa L., including all agronomical varieties * * *." Minn.St. 152.01, subd. 9. At trial, defendant contended that the definition was technical, unambiguous, and to be strictly construed. Introducing considerable botanical evidence that the plant genus Cannabis was polytypic, the defendant argued that the state must prove beyond a reasonable doubt that the substance is Cannabis sativa L., rather than, e. g., Cannabis ruderalis or Cannabis indica. The trial judge accepted defendant's position:

"The Minnesota Statute still uses the term Cannabis sativa L. rather than simply Cannabis; therefore, I conclude that the Minnesota Statute seems to make illegal the possession of the one form of Cannabis and probably not make illegal possession of the other two species: Cannabis ruderalis and Cannabis indica."

█ We disagree. It is not necessary to review all the taxonomic literature on the monotypic/polytypic Cannabis debate.[3]

**3.** See Fullerton & Kurzman, The Identification and Misidentification of Marijuana, 3 Contemp. Drug Prob. Q. 291–344 (Fall 1974), citing Quim-

by, Doorenbos, Turner & Masoud, Mississippi-Grown Marijuana—Cannabis Sativa, Cultivation and Observed Morphological Variations,

See, *United States v. Rothberg,* 351 F.Supp. 1115 (E.D.N.Y.1972), affirmed, 480 F.2d 534 (2 Cir. 1973), certiorari denied, 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973). The interpretation of a statute is a matter of law, not science; the proscription of marijuana, after all, is directed to the public at large and not to botanists alone. While we subscribe strongly to the principle that penal statutes must be strictly construed against the government, *Ferch v. Victoria Elevator Co.,* 79 Minn. 416, 418, 82 N.W. 678 (1900), narrow application of the definition in issue would create serious anomalies and constitutional problems.

While there has been some recent evidence that not all Cannabis *plants* contain measurable amounts of tetrahydrocannabinols (THC),[4] the active euphoric agent or intoxicant associated with marijuana, there is no scientific evidence that any of the *species* of the genus Cannabis lack THC. See, D. Bernheim, Defense of Narcotics Cases, § 4.04A at 4–36 (1975). THC is itself separately and specifically included as a Schedule I controlled substance. Minn.St. 152.02, subd. 2(3). Thus, if the definition of marijuana were held to exclude species other than Cannabis sativa L., those species would not be left in a statutory limbo but would still be proscribed, as " * * * material * * * which contains * * * tetrahydrocannabinols."[5] Minn.St. 152.02, subd. 2(3). Moreover, excluded species would not qualify for the lesser penalties given "marijuana" offenders. Minn.St. 152.15, subd. 1(5); subd. 2(2), (5); subd. 2a; subd. 4. The result is an enforcement scheme which provides major differences in penalties for abuse of different species of the genus Cannabis, species which are al-

most impossible to distinguish visually or even microscopically once fragmented and/or dried.[6] See, Fullerton & Kurzman, the Identification and Misidentification of Marijuana, 3 Contemp. Drug Prob. Q. 291. Such a scheme presents obvious equal protection and due process (fair notice) problems. See, *People v. Van Alstyne,* 46 Cal. App.3d 900, 913, 121 Cal.Rptr. 363, 371 (1975), certiorari denied, 423 U.S. 1060, 96 S.Ct. 798, 46 L.Ed.2d 652 (1976); see, also, *United States v. Walton,* 168 U.S.App.D.C. 305, 306, 514 F.2d 201, 202 (1975). The unreasonable consequences of narrow application of the definition requires closer examination of legislative intent. *State v. Carroll,* 225 Minn. 384, 386, 31 N.W.2d 44, 45 (1948).

In 1953, the legislature added "Cannabis" to the definition of narcotic drugs, and stated that the term "includes all parts of the plant Cannabis Sativa L." Laws 1953, c. 431, §§ 1, 2. It is apparent from this language that the legislation reflected the general consensus among botanists that Cannabis was monotypic. See, *United States v. Moore,* 330 F.Supp. 684, 686 (E.D.Pa.1970), affirmed, 446 F.2d 448 (3 Cir. 1971), certiorari denied 406 U.S. 909, 92 S.Ct. 1617, 31 L.Ed.2d 820 (1971); *United States v. Rothberg,* 351 F.Supp. 1115, 1118 (E.D.N.Y. 1972).

■ In 1970, the Federal Bureau of Narcotics and Dangerous Drugs drafted legislation approved by the National Conference of Commissioners on Uniform State Laws as the Uniform Controlled Substances Act. Minnesota adopted much of the new uniform act, including the definition of "marijuana" in issue in this appeal. L.1971 c. 937, § 4. Although there had been scientif-

27 Economic Botany 117–127 (1973); Schultes, Klein, Plowman & Lockwood, Cannabis: An Example of Taxonomic Neglect, 23 Botanical Museum Leaflets, Harvard University 337–367 (1974); L. C. Anderson, "A Study of Systematic Wood Anatomy in Cannabis," 24 Harvard Botanical Museum Leaflets 29 (1974); E. Small, "The Systematics of Cannabis," 61 American Journal of Botany Abstracts, 50 (1974).

**4.** Small & Beckstead, Common Phenotypes in 350 Stocks of Cannabis, 37 Lloydia 144 (1973).

**5.** Several courts have concluded that the specific proscription of substances containing THC makes the botanic debate academic: *U. S. v. Rothberg,* 480 F.2d 534, 536 (2 Cir. 1973); certiorari denied, 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973); *McKenzie v. State,* 57 Ala. App. 69, 326 So.2d 135 (1976); See, also, *Cassady v. Wheeler,* 224 N.W.2d 649 (Iowa 1974).

**6.** Or further refined into hashish, a marijuana derivative. See, *United States v. Kelly,* 527 F.2d 961 (9 Cir. 1976).

ic studies questioning the monotypic categorization,[7] it was generally assumed by the lay and legal community that there was but one species of marijuana subject to agronomical variation, i. e., differences attributable to climatic conditions.[8] The definition reflects a general legislative intent to regulate all species of the genus Cannabis, and we so hold.[9] Thus, contrary to the assumption of the trial court, the state must only establish beyond a reasonable doubt the generic identity of the plant substance in issue; identification of the particular species is not relevant.

We are satisfied that our interpretation of Minn.St. 152.01, subd. 9, accurately reflects legislative intent since the major concern of the legislature, the morphological effects of use, are indistinguishable among the various species of Cannabis. Moreover, we are satisfied that our interpretation does not raise problems of adequate public notice. Identification of the species of Cannabis is irrelevant to the user and practically impossible in its common commercial forms. We think that members of the general public of common intelligence understand that the clandestine sale of marijuana, whatever the species, constitutes a crime. See *People v. Van Alstyne,* 46 Cal.App.3d 900, 917, 121 Cal.Rptr. 363, 374 (1975), certiorari denied, 423 U.S. 1060, 96 S.Ct. 798, 46 L.Ed.2d 652 (1976); *United States v. Honneus,* 508 F.2d 566, 575 (1 Cir. 1974) certiorari denied, 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975).

**7.** See, Fullerton & Kurzman, *supra,* at 302 n. 46, 47, citing P. M. Zhukovskii, Cultivated plants and their plants and their wild relatives —systematics, geography, cytogenetics, ecology, origin, Kolos Leningrad, 1964; T. G. Tutin, ed., Cannabis section, Flora Europea, 67 (1964).

**8.** "[I]t seems that there is only one species of marihuana * * *," *Leary v. United States,* 395 U.S. 6, 50, 89 S.Ct. 1532, 1555, 23 L.Ed.2d 57, 90 (1969).

"[B]otanists believe * * * *Cannabis sativa* represents a single species which has not stabilized and has many variations." National Commission on Marihuana and Drug Abuse, First Report (1972), Appendix I–2, p. 16.

See, Fullerton & Kurzman, *supra,* at 302, 303 n. 48, 53, citing Schultes, "Random Thoughts and Queries on the Botany of Cannabis," in Joyce and Curry, The Botany and Chemistry of Cannabis (1970). Schultes adopted the polytypic position in 1973. Schultes and Hoffman, the Botany and Chemistry of Hallucinogens (1973).

See, also, Black's Law Dict. (4th ed. 1951), pp. 1119–1120; Webster's Third New Internat. Dict. (1966), p. 1381.

**9.** Our decision is consistent with those of the overwhelming majority of jurisdictions which have considered the issue. The conclusions of other state and federal courts are entitled to great weight when construing a uniform law. Minn.St. 645.22.

The federal appellate courts are unanimous: *United States v. Walton,* 168 U.S.App.D.C. 305, 514 F.2d 201 (1975); *United States v. Honneus,* 508 F.2d 566 (1 Cir. 1974), certiorari denied, 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975); *United States v. Rothberg,* 480 F.2d 534 (2 Cir. 1973) certiorari denied, 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973); *United States v. Moore,* 446 F.2d 448 (3 Cir. 1971), certiorari denied, 406 U.S. 909, 92 S.Ct. 1617, 31 L.Ed.2d 820 (1971); *United States v. Sifuentes,* 504 F.2d 845 (4 Cir. 1974); *United States v. Gaines,* 489 F.2d 690 (5 Cir. 1974); *United States v. Dinapoli,* 519 F.2d 104 (6 Cir. 1975); *United States v. Gavic,* 520 F.2d 1346 (8 Cir. 1975); *United States v. Kelly,* 527 F.2d 961 (9 Cir. 1976); *United States v. Spann,* 515 F.2d 579 (10 Cir. 1975).

The state courts are virtually so: See, e. g., *People v. Van Alstyne,* 46 Cal.App.3d 900, 121 Cal.Rptr. 363 (1975), certiorari denied, 423 U.S. 1060, 96 S.Ct. 798, 46 L.Ed.2d 652 (1976); *People v. Holcomb,* 187 Colo. 418, 532 P.2d 45 (1975); *Nelson v. State,* 319 So.2d 154 (Fla. App.1975); *Cassady v. Wheeler,* 224 N.W.2d 649 (Iowa 1974); *State v. Shaw,* 343 A.2d 210 (Me.1975); *People v. Riddle,* 65 Mich.App. 433, 237 N.W.2d 491 (1976); *State v. Thorp,* 116 N.H. 303, 358 A.2d 655 (1976); *State v. Romero,* 74 N.M. 642, 397 P.2d 26 (1964), reiterated in *State v. Esquibel,* 90 N.M. 117, 560 P.2d 181 (Ct.App.1977); *Winters v. State,* 545 P.2d 786 (Okl.Cr.App.1976); *State v. Murphy,* 234 N.W.2d 54 (S.D.1975); *Hicks v. State,* 534 S.W.2d 872 (Tenn.Cr.App.1975); *Williams v. State,* 524 S.W.2d 705 (Tex.Cr.App.1975).

Three trial court decisions have declined to so hold: *United States v. One 1966 Chevrolet Sedan,* 14 Crim.L.Rep. 2387 (S.D.Fla.1974); *United States v. Collier,* Crim.No. 43604–73 (D.C.Super., June 14, 1974); *United States v. Lewallen,* 385 F.Supp. 1140 (W.D.Wis.1974). The cases have lost all practical vitality—*Chevrolet Sedan* has been overruled, sub silentio, by *United States v. Gaines, supra ; Collier* by *United States v. Johnson,* 333 A.2d 393 (D.C. App.1975); *United States v. Walton, supra;* and *Lewallen* strongly criticized in *United States v. Kelly, supra; United States v. Dinapoli, supra.*

Nevertheless, in the interest of clarity, the legislature might wish to consider the example set by the several states who have recently revised their definition of marijuana to include "all species of the genus Cannabis." [10]

2. Identification of the contraband.

 The state introduced scientific and non-scientific evidence to identify the material seized at the Rosasco arrest. M.B.C.A. chemist, Anne Rummel, M.B.C.A. agent Sickler, and witness Rosasco testified to initial, gross, visual identification of the substance. Sickler stated that he observed M.B.C.A. agent Paul Gerber perform a Valtox field identification at the time the material was seized, with positive results. Rummel then testified that three separate laboratory tests—microscopic identification, Duquenois-Levine, and thin layer chromatography—were performed upon each of the eight random samples, with consistently positive findings.

The defendant sought to undermine the probative impact of this evidence, pointing out the limited qualifications of the laymen to make visual identifications, and that Rummel did not have sufficient botanical training to make a conclusive microscopic identification. Moreover, reagents used in the Duquenois-Levine test were not tested to assure identity or purity; there was no notation regarding the atmosphere saturation in the thin layer chromatography test tank, nor were the plate or a vapor sample preserved. Finally, the failure to purify the samples prior to testing left the possibility that combinations of naturally-occurring substances had contaminated the samples and given misleading results.

The trial judge properly admitted the evidence and considered defendant's objections in determining its weight. He concluded that this evidence, alone, was insufficient to identify the substance beyond a reasonable doubt:

"The defendants in this case have submitted testimony and persuasive arguments to the effect that the combination of screening tests in this particular case, and the combination of screening tests in general, does not afford the kind of identification that is needed in the criminal law and does not amount to a proof beyond a reasonable doubt that the substance is declared to be the controlled substance.

"I have listened to this testimony for more than a half a day. I have reviewed some of the literature and the law on the subject, and I am persuaded, that at least in a case where there is possession of a controlled substance *with the intent to sell,* that the identification procedures are probably inadequate." (Emphasis in original).

 Whether this court would draw the same conclusion from the evidence is not relevant; our role as a reviewing court is limited. The trial before Judge Olson was held following defendant's written and informed waiver of his right to a jury. Under those circumstances, the judge's findings of fact are entitled to the same weight on review as a jury verdict. *State v. Mytych,* 292 Minn. 248, 252, 194 N.W.2d 276, 279 (1972); *State v. Crosby,* 277 Minn. 22, 24, 151 N.W.2d 297, 299 (1967). Such findings will not be set aside unless clearly erroneous. *State v. Knox,* Minn., 250 N.W.2d 147, 154 (1976). These findings of fact are therefore upheld.

 The trial court went on to consider "inferences identifying the substance from nonscientific evidence." Four additional facts were considered:

"1. The amount of the sale amounting to 220 pounds.

"2. The sale price amounting to $120 per pound.

"3. The statement of the Defendant Vail quoted by the State's witness Mr. Rosasco identifying the product as not only marijuana, but identifying the product as 'Mexican grade' marijuana.

**10.** See, e. g., R.S.Mo.Supp.1975, § 195.010(20) (Missouri); TCA 52–1409(n) (1974) (Tennessee); and SDCL 34–20B–1(10) (1976).

"4. The inferred fact, which this Court makes, that a seller of a product containing 220 pounds is probably sophisticated and competent and alert enough to have made his own tests before he himself bought the product for presumably a considerable sum of money from his supplier. Whether that task was simply smoking the product in order to test the substance or whether the product was otherwise analyzed is, of course, unknown to the Court."

We have not prescribed minimum evidentiary requirements in identification cases, preferring to examine the sufficiency of the evidence on a case-by-case basis. See, e. g., *State v. Dick*, Minn., 253 N.W.2d 277 (1977); *State v. Boyum*, 293 Minn. 482, 197 N.W.2d 218 (1972). In this case, we do not believe that the additional considerations relied upon by the trial court are sufficient to support its determination of guilt. Minnesota law requires proof of the actual identity of the substance, the defendant's belief is not sufficient. *State v. Dick*, Minn., 253 N.W.2d 277, 279 (1977). The price charged and representations made by the defendant are, at best, only assertions of his belief.

■ At trial, the state expressly abandoned its attempt to infer identity from quantity; we find no necessary relationship. Finally, the last "fact" listed, a commercial practice of testing among large-volume sellers, is wholly speculative and unsupported by the evidence. Rosasco and Sickler both testified that no part of the material in

issue was ever burned or smoked.[11] On the facts of this case, we conclude that the "additional factors" simply do not advance the state in satisfying its burden of proof, given the trial court's skepticism of the scientific evidence. Because the trial court found that the scientific evidence was inadequate to prove beyond a reasonable doubt that the substance was *Cannabis sativa L.*, and because four additional factors were impermissibly used to sustain the state's burden of proof, we have found, in effect, that the evidence was insufficient to sustain the verdict. The double jeopardy clause bars a new trial. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

■ The second issue raised by the defendant is the equal protection challenge to the statutory classification of marijuana as a Schedule I controlled substance. Defendant acknowledges that the equal protection standard applicable in reviewing the Minnesota marijuana laws requires a demonstration that the classification is reasonable, not arbitrary, and bears a rational relationship to a permissible state objective. *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). Defendant argued and presented evidence at the hearing of his motion to dismiss and on appeal that the inclusion of marijuana within Schedule I controlled substances was both *over-inclusive*, since it satisfies none of the statutory criteria,[12] and *under-inclusive*, since alcohol

---

11. See, e. g., *State v. Dick*, Minn., 253 N.W.2d 277, 279 n. 1 (1977), upholding a jury's conclusion that the substance was marijuana on the basis of scientific evidence and "testimony of the undercover policeman that when lit, the substance gave off an odor which he concluded was the odor of burning marijuana."

12. The legislature classified marijuana in Schedule I when the schedule was originally enacted. Laws 1971, c. 937, § 12. It then provided for annual review by the state board of pharmacy:

"The state board of pharmacy may, by regulation, add substances to or delete or reschedule substances listed in this section. The state board of pharmacy, after consulting with the advisory council on controlled substances, shall annually, on or before May 1 of each year,

conduct a review of the placement of controlled substances in the various schedules.

"In making a determination regarding a substance, the board of pharmacy shall consider the following: The actual or relative potential for abuse, the scientific evidence of its pharmacological effect, if known, the state of current scientific knowledge regarding the substance, the history and current pattern of abuse, the scope, duration, and significance of abuse, the risk to public health, the potential of the substance to produce psychic or physiological dependence liability, and whether the substance is an immediate precurser of a substance already controlled under this section. The state board of pharmacy may include any non-narcotic drug authorized by federal law for medicinal use in a schedule only if such drug must, under either federal or state law or regulation,

and nicotine are not so classified although they in fact satisfy the statutory criteria.

Minnesota's classification scheme is based on the 1970 Uniform Controlled Substances Act, which listed marijuana in Schedule I because little was known about its long-term effects.

"Congress listed marihuana in Schedule I principally on the recommendation of HEW, which urged 'that marijuana be retained within Schedule I at least until the completion of certain studies now underway to' determine the physical and psychological dependency effects of the drug. See H.R. Report, supra, note 3, at 4579, 4629–30. Apparently the potential for abuse and the absence of significant medical value were the determining grounds for placement of marihuana in the first schedule. See 116 Cong.Rec. 797 (daily ed. Jan. 28, 1970) (remarks of Sen. Hruska)." *United States v. Kiffer,* 477 F.2d 349, 356 (2 Cir. 1973), certiorari denied sub nom., *Harmash v. United States,* 414 U.S. 831, 94 S.Ct. 165, 38 L.Ed.2d 65 (1973).

The intervening years have produced a growing body of scientific literature on the effects of marijuana on the human physiology and psychology,[13] but marijuana has not been rescheduled by either the state legislature or the state board of pharmacy, acting under its statutory authority. Minn.St. 152.02, subd. 8. In response to growing public and scientific opinion against imposing Schedule I penalties on marijuana users, the legislature has repeatedly amended Minn.St. 152.15 to reduce penalties. L.1971, c. 937, § 17; L.1973, c. 693, §§ 10–13; L.1976, c. 42, §§ 1, 2.

■ It is apparent, then, that nominal inclusion of marijuana within Schedule I has little impact, since the classification is not a controlling factor in the scheme of punishment. See, *People v. Morehouse,* 80 Misc.2d 406, 364 N.Y.S.2d 108 (Sup.Ct.1975); *United States v. Maiden,* 355 F.Supp. 743 (D.Conn.1973). Thus, neither *People v. McCabe,* 49 Ill.2d 338, 275 N.E.2d 407 (1971), nor *People v. Sinclair,* 387 Mich. 91, 194 N.W.2d 878 (1972), which sustained equal protection challenges to classification of marijuana as a "narcotic drug" for purposes of penalties, are in point.[14]

be sold only on prescription." Minn.St. 152.02, subd. 8. We find this subdivision controlling, rather than Minn.St. 152.02, subd. 7, cited by defendant. The latter sets out specific criteria for the subsequent inclusion of additional substances in Schedule I:

"(1) The board of pharmacy shall place a substance in Schedule I if it finds that the substance has: A high potential for abuse, no currently accepted medical use in the United States, and a lack of accepted safety for use under medical supervision.

"(2) The board of pharmacy shall place a substance in Schedule II if it finds that the substance has: A high potential for abuse, currently accepted medical use in the United States, or currently accepted medical use with severe restrictions, and that abuse may lead to severe psychological or physical dependence.

"(3) The board of pharmacy shall place a substance in Schedule III if it finds that the substance has: A potential for abuse less than the substances listed in Schedules I and II, currently accepted medical use in treatment in the United States, and that abuse may lead to moderate or low physical dependence or high psychological dependence.

"(4) The board of pharmacy shall place a substance in Schedule IV if it finds that the substance has: A low potential for abuse relative to the substances in Schedule III, currently accepted medical use in treatment in the United States, and that abuse may lead to limited physical dependence or psychological dependence relative to the substances in Schedule III.

"(5) The board of pharmacy shall place a substance in Schedule V if it finds that the substance has: A low potential for abuse relative to the substances listed in Schedule IV, currently accepted medical use in treatment in the United States, and limited physical dependence and/or psychological dependence liability relative to the substances listed in Schedule IV."

**13.** At the hearing, Judge Olson accepted defendant's offer of three publications for study: Brecher, et al., Licit and Illicit Drugs (1972); Secretary of Health, Education, and Welfare, Marijuana and Health (1975); and a transcript of the testimony of three expert witnesses in *United States v. Maiden,* 355 F.Supp. 743 (D.Conn.1975).

**14.** In fact, Minnesota separately defines, Minn.St. 152.01, subd. 10, and penalizes, Minn.St. 152.15, subd. 1(1); subd. 2(1) violations with the narcotic drugs included in Schedule I, resulting in a three-level Schedule I penalty scheme for (1) narcotic drugs; (2) other

■ In view of the continued debate over possible short- and long-term physical and psychological effects, it cannot fairly be said that continued apprehension and reluctance of the state board of pharmacy to reschedule .marijuana is so arbitrary and unreasonable as to render it unconstitutional.[15]

■ Similarly, the fact that Schedule I does not include all substances which arguably meet the statutory criteria is not constitutionally fatal. The legislature is not compelled to attempt to regulate all harmful substances merely because it attempts to regulate some. *United States v. Kiffer, supra.* See, also, *McDonald v. Board of Election Commissioners,* 394 U.S. 802, 809–811, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); *Williamson v. Lee Optical, Inc.,* 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

Reversed and judgment of acquittal ordered.

KELLY, Justice (dissenting).

For the most part I concur with the majority opinion, but I dissent with respect to what I consider to be a misinterpretation of Minnesota law by the majority.

At page 134 of the majority opinion, the court states that, "Minnesota law requires proof of the actual identity of the sub-

stance, the defendant's belief is not sufficient," citing as authority *State v. Dick,* Minn., 253 N.W.2d 277, 279 (1977). The majority opinion here then goes on to hold that the evidence relied on by the judge was not sufficient to sustain the guilty verdict.

In the *Dick* case, *supra,* this court made it clear that one of the essential elements of the crime of distribution of marijuana is that the trier of fact must find that the substance distributed was indeed marijuana. With this statement I am in agreement, but in *Dick* this court did not hold or state that a defendant's statement that the substance in question was marijuana was not sufficient evidence to prove that fact. Nor did this court indicate that inferences from the facts and circumstances present at the time of the making of the statement could not be made to corroborate the evidence.

The use of permissible inferences in analyzing the sufficiency of the evidence has long been a normal judicial practice.

" * * * The process of thought, by which we reason from evidence toward proof, is termed Inference. This process, for any one piece of evidence, does not mean complete persuasion, i. e., proof; it means merely a sort of mental push to-

---

Schedule I substances, except marijuana; (3) marijuana.

**15.** Our conclusion is consistent with those of other jurisdictions which have considered similar equal protection challenges to such classification. See, *United States v. Kiffer,* 477 F.2d 349 (2 Cir. 1973), certiorari denied sub nom., *Harmash v. United States,* 414 U.S. 831, 94 S.Ct. 165, 38 L.Ed.2d 65 (1973); *English v. Virginia Probation and Parole Bd.,* 481 F.2d 188 (4 Cir. 1973); *United States v. Gramlich,* 551 F.2d 1359 (5 Cir. 1977), certiorari denied, 434 U.S. 866, 98 S.Ct. 201, 54 L.Ed.2d 141 (1977); *Kehrli v. Sprinkle,* 524 F.2d 328 (10 Cir. 1975), certiorari denied, 426 U.S. 947, 96 S.Ct. 3165, 49 L.Ed.2d 1183 (1976); *Kenny v. State,* 51 Ala.App. 35, 282 So.2d 387, certiorari denied, 291 Ala. 786, 282 So.2d 392 (1973); *Ravin v. State,* 537 P.2d 494 (Alaska 1975); *State v. Wadsworth,* 109 Ariz. 59, 505 P.2d 230 (1973); *People v. Bloom,* 270 Cal.App.2d 731, 76 Cal. Rptr. 137 (1969); *People v. Bourg,* Colo., 552 P.2d 504 (1976); *People v. Stark,* 157 Colo. 59, 400 P.2d 923 (1965); *State v. Rao,* 171 Conn.

600, 370 A.2d 1310 (1976); *Kreisher v. State,* 319 A.2d 31 (Del.1974); *Blincoe v. State,* 231 Ga. 886, 204 S.E.2d 597 (1974); *State v. Renfro,* 56 Hawaii 501, 542 P.2d 366 (1975); *State v. O'Bryan,* 96 Idaho 548, 531 P.2d 1193 (1975); *People v. McCaffrey,* 29 Ill.App:3d 1088, 332 N.E.2d 28 (1975); *Ross v. State,* 360 N.E.2d 1015 (Ind.App.1977); *State v. Leins,* 234 N.W.2d 645 (Iowa 1975); *State v. Sliger,* 261 La. 999, 261 So.2d 643 (1972); *State v. Donovan,* 344 A.2d 401 (Me.1975); *Commonwealth v. Leis,* 355 Mass. 189, 243 N.E.2d 898 (1969); *State v. Stock,* 463 S.W.2d 889 (Mo.1971); *State v. White,* 153 Mont. 193, 456 P.2d 54 (1969); *Egan v. Sheriff, Clark County,* 88 Nev. 611, 503 P.2d 16 (1972); *State v. Nugent,* 125 N.J.Super. 528, 312 A.2d 158 (1973); *People v. Morehouse,* 80 Misc.2d 406, 364 N.Y.S.2d 108 (Sup.Ct.1975); *State v. Strong,* 245 N.W.2d 277 (S.D.1976); *Gaskin v. State,* 490 S.W.2d 521 (Tenn.1973), appeal dismissed 414 U.S. 886, 94 S.Ct. 221, 38 L.Ed.2d 133 (1973); *Miller v. State,* 458 S.W.2d 680 (Tex.Cr.App.1970).

wards proof. Many inferences may be required, in combination, to reach proof. * * * The term 'tends to show' or 'indicates' describes its force." Wigmore, *Students' Textbook of The Law of Evidence,* § 22.

In the instant case there was credible evidence that the defendant stated that the substance he was distributing was "high of grade marijuana." Such a statement of declaration made by the defendant was properly admitted as proof of an independent fact, to-wit: that the substance was indeed marijuana.[1] Naturally, such proof is not conclusive and, like any other evidence, may be rebutted. In this case however, no such contradictory evidence appears in the record.

The other evidence considered by the judge to infer that the substance was marijuana is also significant. The fact that the defendant bought a large quantity of the substance himself and presumably paid a high price for the same raises an inference that he ascertained for himself that the substance was marijuana. It need not be decided whether or not defendant's statement, standing alone, would be sufficient evidence of the identity of the substance for there is an abundance of evidence, both scientific and otherwise, which would corroborate the defendant's statement. Furthermore, as was pointed out above, the defendant may rebut the inference by the introduction of contradictory evidence. If the scientific and opinion evidence was not strong enough to sustain the conviction, the declaration of the defendant and the inferences drawn by the court from all of the attendant circumstances were more than sufficient to sustain the conviction. I would affirm.

With respect to all other portions of the opinion, I would concur with the majority.

TODD, Justice (dissenting).

I join in the dissent of KELLY, J.

SCOTT, Justice (dissenting).

I join in the dissent of KELLY, J.

---

1. "Statements or declarations made by one accused of a crime, which relate to the crime with which he is charged, including those contained in a statement purporting to be exculpatory in nature, from which, in connection with other evidence, an inference of guilt may be drawn, are admissible in evidence against him, at least insofar as such statements have been made by the accused freely and voluntarily, without deprivation of his constitutional rights. Such a statement is admitted as proof of an independent fact, rather than as a confession of guilt. * * *." 29 Am.Jur. 2d, Evidence, § 611.