388 So.2d 254 (1980)
Charles D. TURNER, Appellant,
v.
STATE of Florida, Appellee.
No. NN-486.
District Court of Appeal of Florida, First District.
August 26, 1980.
Rehearing Denied October 8, 1980.
*255 Richard S. Rhodes, Orlando, for appellant.
Jim Smith, Atty. Gen., and David Gauldin, Asst. Atty. Gen., for appellee.
ERVIN, Judge.
Appellant appeals his conviction for possession of more than five grams of cannabis, entered following a non-jury trial. We affirm.
Appellant and a friend were stopped by an agricultural inspector after they drove past an inspection station in a Dodge pick-up truck with an attached camper. The vehicle was returned to the inspection station where, with defendant's consent, the inspector looked inside the rear portion of the truck, opened the lid of a wooden box and found a large duffle bag, which had the odor of marijuana. When appellant was asked whether an examination could be made of the bag, he declined. The inspector called the sheriff who obtained a search warrant based on the inspector's affidavit that he believed the bag contained marijuana. The sheriff searched and found approximately 200 pounds of marijuana in the camper.
Appellant and the state stipulated to a non-jury trial solely on the issue of identification of the marijuana, and appellant reserved his right to appeal denial of his motions to dismiss and to suppress the evidence.
There is no merit to appellant's contention that his motion to dismiss should have been granted because the state's traverse did not comply with Fla.R.Crim.P. 3.190(d). Although the state attorney had apparently not filed a written traverse, he traversed orally at the hearing, and the appellant did not object. Appellant waived objection to the state's traverse. State v. Cramer, 383 So.2d 254 (Fla.2d DCA 1980). Moreover, the oral traverse, stating that appellant had sufficient knowledge and control of the marijuana in the truck based on his statements in the presence of the inspector and the officer, was enough to imply knowledge sufficient to avoid a motion to *256 dismiss. See Cummings v. State, 378 So.2d 879 (Fla.1st DCA 1979).
Additionally, we do not agree appellant was illegally stopped on the ground his vehicle was a "camping trailer", as defined by Section 3 20.01(1)(b), Florida Statutes (1977), and therefore excluded from agricultural inspection under Section 570.15(1)(a)(7), Florida Statutes (1977). The inspector had probable cause to believe the pick-up truck with a camper was a truck. Holec v. State, 376 So.2d 401 (Fla.1st DCA 1979).
As to the sufficiency of the inspector's affidavit that he smelled marijuana to support a search warrant for marijuana, Pederson v. State, 373 So.2d 367 (Fla.1st DCA 1979), is distinguishable. There the search warrant was issued for agricultural products. The court expressly declined to rule on whether "the smell of marijuana was sufficient probable cause supporting the search warrant." Pederson, supra, at n. 1, pp. 368-69. We upheld a search without a warrant under otherwise identical circumstances in Flynn v. State, 374 So.2d 1041 (Fla.1st DCA 1979).
Appellant's final point, that the state failed adequately to identify the substance seized as marijuana, deserves discussion. The state's expert witness, Harriet Pfaffman, a chemist with FDLE, stated she was familiar with botany and taxonomic botanical identification. She was accepted as an expert on the chemical and botanical aspects of identification of cannabis. The decision as to an expert witness's qualifications is one left to the trial court's discretion, reviewable only for abuse. McCormick, Evidence § 13 at 30 (2d ed. 1972). See also Fotianos v. State, 329 So.2d 397, 401 (Fla.1st DCA 1976). Her microscopic examination of the substance revealed cystolith and glandular hairs, indicative of cannabis, but which are found also on many other plants. She could not recall whether the cystolith hairs were located on the tops of the leaves as they would be if the substance were cannabis. She then performed a Duquenois-Levine test and determined the substance was marijuana.[1]
The defense's expert, Dr. Fullerton, was an associate professor of pharmaceutical chemistry at Oregon State University who held a doctorate in organic chemistry. He has published at least one article in a professional journal on the subject of identification of marijuana in criminal cases. His conclusion, without detailing the scientific and statistical facts he testified to, was that the Duquenois-Levine test was, at best, non-specific for marijuana, and that many other substances, such as coffee, sandlewood and nutmeg, would produce a positive result when exposed to it. Dr. Fullerton stated that microscopic identification with hydrochloric acid, to determine the presence of calcium carbonate, and use of mass or infrared spectrography would positively identify marijuana.
Based on Dr. Fullerton's testimony, appellant argued before the trial judge and here that the state's evidence did not prove beyond a reasonable doubt that the substance seized was marijuana. It is true that language in State v. Vail, 274 N.W.2d 127 (Minn. 1979) and State v. Wind, 60 Wis.2d 267, 208 N.W.2d 357 (1973), supports appellant's assertion that the Duquenois-Levine test is not sufficient to prove identity of a substance as marijuana beyond a reasonable doubt. In Vail, supra, the Minnesota Supreme Court affirmed the trial court's decision that the Duquenois-Levine test, along with microscopic identification and thin-layer chromatography, were insufficient proof of the identity of the substance seized, even in conjunction with facts that appellant was attempting to sell 200 pounds of it and was obviously under the impression himself that it was marijuana: "Minnesota's *257 law requires proof of the actual identity of the substance, the defendant's belief is not sufficient." 274 N.W.2d at 134. Moreover, in Vail, the court placed great emphasis on the fact that the trial judge, sitting in place of the jury, had found the evidence of the identity of the substance to be insufficient. The court emphasized that it did not prescribe minimum evidentiary requirements in marijuana identification cases. 274 N.W.2d at 134.
In State v. Wind, supra, the Wisconsin Supreme Court held that, when the appellant sold marijuana to an undercover agent, positive results of the Duquenois-Levine and thin-layer chromatography test, although admittedly non-specific for marijuana, were admissible and probative towards identifying the substance. However, the court stated further that those tests' results alone would not "meet the burden of proving the identity of the substance beyond a reasonable doubt," in a case involving only possession. 208 N.W.2d at 361.
In this case, the trial judge sitting as trier of fact, found as a fact that the substance was marijuana. Questions of fact are not generally within our province where the record supports the trial court's findings. We decline to state as a matter of law that the Duquenois-Levine and microscopic tests are not probative of the identity of a substance as marijuana.[2] The trial judge had other facts before him, including the inspector's testimony that the substance smelled like marijuana, and the fact that appellant retrieved a small amount of the substance from the cab of the truck with the statement that he did not believe the inspector and sheriff would let him take it with him. We expressly decline to follow the Minnesota rule which requires scientific proof of the actual identity of the substance as marijuana. Vail, supra, at 134. Instead, we approve the opinion in Moore v. United States, 374 A.2d 299, 302 (D.C.App. 1977), stating that, in addition to the scientific tests, other facts tending to show the identity of the substance, such as its appearance and smell and circumstances under which it was seized, are probative and can meet the state's burden of proof. Accord, State v. Otswald, 591 P.2d 646 (Mont. 1979). In Otswald, the state had no expert chemical identification of two marijuana "joints" found in the appellant's possession. The officer who found the joints conducted a test with his "valtox kit", which contained a selection of chemical reagents which might produce characteristic colors when combined with marijuana, and obtained positive results. The state conceded that the test was not specific for marijuana, but argued that the test's results, combined with the officer's physical identification of the substance as marijuana, were adequate evidence. The court agreed, stating:
We have reviewed many cases involving the burden of proving beyond a reasonable doubt the identity of a substance alleged to be marijuana. In only two of those cases do we find language indicating that absolute chemical identification is required to meet this burden of proof, and in both cases that language was dicta only. [Cites omitted.] On the other hand, numerous cases hold that marijuana is not difficult to characterize without chemical analysis and that testimony of officers who have had experience searching for and identifying marijuana is sufficient. 591 P.2d at 652.
AFFIRMED.
ROBERT P. SMITH, Jr. and WENTWORTH, JJ., concur.
NOTES
[1] "The Duquenois-Levine test is a color chemical test in which the suspected material is placed in a test tube. A reagent is added, the tube is then shaken and, following this hydrochloric acid is added. The tube is shaken once again and if color forms, chloroform is added and the tube is again shaken. If chloroform is extracted into the lower level and the color is violet to blue, the test is usually considered to be positive for marijuana." Annot., Proof The Substance is Marijuana, 75 A.L.R.3d 717, 722, n. 23 (1977).
[2] While controversy surrounds the reliability of the Duquenois-Levine test as a means of identifying marijuana, the government and most crime laboratories accept its validity for identification. Stein, Laessig and Indriksons, An Evaluation of Drug Testing Procedures Used by Forensic Laboratories and the Qualifications of Their Analysts, 1973 Wisc.L.Rev. 727. Additionally, Thornton and Nakumura, In the Identification of Marijuana, 12 Journal of the Forensic Science Society, 461, 480 (1972), observe that the specificity of the Duquenois reaction has been established for over 30 years and that no other plant material other than marijuana has been found to have an identical reaction. For a contrary view, see Kurzman, Fullerton and McGuire, Winning Strategies for Defense of Marijuana Cases: Chemical and Botanical Issues, 1 Natl.J. of Crim.Def. 487, 523-24 (1975).