# STATE v. TONY VOSS.[1]

June 22, 1934.

No. 29,869.

*J. A. Cashel,* for appellant.

*Harry H. Peterson,* Attorney General, *Roy C. Frank,* Assistant Attorney General, and *Arnold W. Brecht,* County Attorney, for the state.

*HILTON, Justice.*

Defendant was convicted of grand larceny in the second degree. He appeals from an order denying his motion for a new trial.

The information in proper form charged the defendant with stealing six black and white Poland China hogs of the value of

[1]Reported in 255 N. W. 843.

about $30 from the owner thereof, one Marchel T. Killen, at a time and place therein stated.

In a sworn confession, properly received in evidence, defendant admitted that on or about January 20, 1933, he penned up on his farm two of Killen's hogs; that later that evening his brother Benny and one Pacholl penned up some more hogs; that after the six hogs were penned up, he, his brother, and Pacholl took the latter's car and trailer, went to a granary northwest of Kilian, and loaded the trailer with barley, which barley was then hauled to defendant's place and there unloaded; that the next morning defendant and Pacholl delivered and sold the six hogs to one Mitchell at Worthington for a little over $27; that Pacholl gave the name of "Johnny McCune," and the payee's name on the check was so designated; that defendant indorsed the check at the Montgomery-Ward store in Worthington; that after buying a Ford generator, for which about four dollars was paid, the balance was divided equally between defendant and Pacholl.

Killen testified that the value of the stolen hogs was about $30 or $35. Pacholl was brought from Stillwater penitentiary to testify. He stated that he recalled locking up four of Killen's hogs around five or six o'clock of an evening about January 20, 1933. His testimony corroborated the statements made in defendant's confession relative to the stealing of the barley the same night and the sale of the hogs to Mitchell the next morning. Mitchell's daily "buy report" for January 21, 1933, was received in evidence. It showed the purchase of six hogs from "J. M. McCune" for $27.07.

Numerous assignments of error raise but two questions meriting consideration; i. e. that the court erred in admitting testimony in evidence tending to prove that another crime was committed by the appellant, that of the larceny of the barley; and that the court erred in instructing the jury as to the value of the property taken and in refusing to instruct it that it might return a verdict for a lesser degree of the crime of larceny.

■ The general rule is that upon the trial of a person charged with the commission of a crime evidence that he has committed other crimes is inadmissible. 2 Dunnell, Minn. Dig. (2 ed. & Supp.)

§ 2459. However, the exceptions to this rule permit evidence of another crime "if it shows a motive for the commission of the crime charged; if it shows a criminal intent; if it shows guilty knowledge; if it identifies the defendant; if it is a part of a common system, scheme or plan embracing the crime charged; * * * or if it shows the capacity, skill or means to do the act charged; or if it characterizes the possession of stolen goods." 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 2459. The admission of such testimony is within the discretion of the trial court, and this court will not interfere except in cases of abuse of such discretion. State v. Duffy, 179 Minn. 439, 229 N. W. 558. The trial court expressly charged the jury that defendant was not on trial for the stealing of the barley and that it could not convict him on that account. In its memorandum the court stated:

"There had been some evidence of drinking that same evening and the evidence that the defendant was able to steal barley the same evening indicated a deliberate act of larceny and again it corroborated the connection of the defendant Voss in the whole enterprise and was admitted only as a part of the whole plot entered into by the parties. As the defendant had included it as a part of his confession it would hardly seem to have been prejudicial to the defendant."

We are of the opinion that the stealing of the barley was so closely related to the stealing of the hogs as to permit introduction of evidence thereof for the purpose of showing criminal intent, and to show that defendant was a participant in all that was done that evening, night, and the next morning.

The court in instructing the jury as to what constituted grand larceny in the second degree quoted the applicable portion of 2 Mason Minn. St. 1927, § 10363, which reads:

"Every person who, under circumstances not amounting to grand larceny in the first degree, in any manner specified in this chapter, shall steal or unlawfully obtain or appropriate property of the value of more than twenty-five dollars, but not exceeding five

hundred dollars, in any manner whatever; * * * shall be guilty of grand larceny in the second degree."

After a proper instruction relative to intent, the court charged:

"There was something said in argument about larceny in the third degree. It is true that in many cases of larceny there may be a conviction for a less degree than that charged, but in this case I instruct you there is no evidence that would justify such a verdict.

"The sworn statement of the defendant states positively that the six hogs sold to witness Mitchell were hogs owned by and taken by him from Mr. Killen. So there is no room to doubt the actual number of hogs that were stolen.

"On the question of value, there are two statements and only two, of the value, one by the owner stating the value at $30, and proof of what they sold for at the open market, which was about $27 as I recall it. Now you are at liberty to take either value, but you cannot disregard both. In either event the value is established at more than $25, so your verdict must be either an acquittal or guilty as charged in the information."

We agree with the trial court's statement made in its memorandum that:

"All the evidence showed that the stolen hogs were of a value of more than $25 and the sworn confession of the defendant showed that he got something over $27 for them. There was not the slightest trace of evidence that they were of any less value."

Under such circumstances, it was proper for the trial court to instruct the jury as it did. State v. Nelson, 91 Minn. 143, 97 N. W. 652; State v. Potoniec, 117 Minn. 80, 134 N. W. 305; State v. Damuth, 135 Minn. 76, 160 N. W. 196. There is no merit to the claim that the evidence does not show that more than four hogs were stolen. Defendant in his confession admitted locking up two of Killen's hogs himself; that his brother and Pacholl penned up some more; that the next morning he and Pacholl "brought *the* six hogs to Worthington." Pacholl's description of the hogs coincided with that of the hogs lost by Killen. Mitchell's daily report

sheet of hogs bought showed that six hogs were purchased from McCune, the name assumed by Pacholl. Defendant participated in the proceeds from the sale of six hogs.

■ Defendant submits, and we agree therewith, that a person may not be convicted on his confession alone. There must be proof that the offense charged was committed. In State v. Huebsch, 146 Minn. 34, 177 N. W. 779, it is stated:

"One accused of crime cannot be convicted upon the uncorroborated testimony of an accomplice nor upon his own confession, but the testimony of the accomplice is corroborated by the confession of the accused and upon such testimony and his confession he may be convicted."

In this case the essential matters admitted in defendant's confession were corroborated by the testimony of the accomplice, Pacholl, and also by the testimony of the owner and the purchaser of the hogs.

We have examined the other assignments of error and find nothing therein justifying a reversal. Where, as here, the record raises no doubt of defendant's guilt and there is no indication that his substantial or constitutional rights have been so violated as to make it reasonably clear that a fair trial was not had, a new trial will not be granted. State v. Nelson, 91 Minn. 143, 97 N. W. 652.

Affirmed.

*DEVANEY, Chief Justice,* took no part.