**STATE of Minnesota, Respondent,**

v.

**Alan George OLHAUSEN,**
**Jr., Appellant.**

**No. C1–02–1361.**

Court of Appeals of Minnesota.

Sept. 30, 2003.

Mike Hatch, Attorney General, John B. Galus, Assistant Attorney General, St. Paul, MN; and L. Douglas Storey, Cottonwood County Attorney, Windom, MN, for respondent.

Daniel S. Adkins, Richard Sand, Richard Sand & Associates, P.A., St. Paul, MN, for appellant.

Considered and decided by RANDALL, Presiding Judge; HUDSON, Judge; and FORSBERG, Judge.

## OPINION

HUDSON, Judge.

Appellant Alan George Olhausen, Jr. challenges his conviction of first-degree controlled substance crime arguing that the state failed to sufficiently identify the controlled substance or establish its weight. Because we conclude the evidence was legally insufficient to support appellant's conviction, we reverse the conviction of first-degree controlled substance crime and remand to the trial court for sentencing on the remaining convictions.

## FACTS

On December 12, 2000, Troy Appel, an investigator with the Worthington Police Department, received information from a confidential informant that appellant Alan George Olhausen, Jr., was interested in selling two pounds of methamphetamine. Appel gave this information to Robert Nance, a special agent with the Minnesota Bureau of Criminal Apprehension. Acting in an undercover capacity, Agent Nance telephoned appellant and arranged to purchase a pound of methamphetamine at a cost of $10,000. Appellant informed Nance that the methamphetamine was in the trunk of a car belonging to his friend May Chantharath, and that the car was parked at the Toro plant in Windom. Appellant and Nance agreed to meet at the Cenex/AmPride gas station in Worthington, at 7:00 p.m. that evening. Prior to meeting appellant, Nance was equipped with an electronic listening device and provided with $10,000, a so-called "flash roll." After arriving at the gas station in Worthington, Agent Nance suggested that he follow appellant in his (Nance's) car to the parking lot of the Toro plant in Windom.

Upon arriving at the Toro plant parking lot, Nance got in appellant's vehicle, and appellant attempted to contact Chanthar-

ath using Nance's cell phone. Agent Nance overheard appellant state, "Hey, man, I am outside your work. Swing out when you can." Appellant then produced a clear plastic baggie which contained, by Nance's estimate, approximately three-and-one-half grams of a yellow, chunky substance; Nance believed it to be an "eight-ball" of methamphetamine. Nance understood that appellant was showing him a sample of the methamphetamine agent Nance was about to purchase. Agent Nance never actually took possession of the plastic baggie. Appellant again attempted to contact Chantharath using Nance's cell phone. Still unable to contact Chantharath, appellant left Nance's cell phone number in a voice message.

Agent Nance told appellant that he would not give him the $10,000 until he saw the methamphetamine. At that point, Nance returned to his vehicle and followed appellant to another area of the parking lot. Nance parked his car immediately next to appellant's car. Nance then received a call from a special agent monitoring the situation advising him that Chantharath had left the Toro plant and was sitting in his car. Chantharath called Nance's cell phone and requested to speak with appellant. Agent Nance reached through his car window and handed the cell phone to appellant. During the conversation, Nance overheard appellant state, "Hello, hey I'm here. I got the money for one, and the other guy will be here later." Nance later heard appellant state, "Ten for one," followed by "You are in your car?" and "He wants to look at it." Nance testified that he understood the "ten for one" comment to mean $10,000 for one pound of methamphetamine.

Next, Agent Nance saw appellant drive over to Chantharath's car, but he never saw appellant actually enter Chantharath's vehicle because appellant's car was block-

ing his (Nance's) view. Several minutes later appellant returned to his vehicle. Because appellant expressed uneasiness about completing the transaction in the Toro parking lot, Nance suggested that they go to the nearby Hy Vee parking lot; appellant agreed. Once there, Nance entered appellant's vehicle and questioned him about the packaging of the alleged methamphetamine. Appellant indicated, "That's how it is coming." Appellant then ripped open a corner of the package and stated, "See, it is covered in cinnamon and mustard."

Agent Nance testified that the package was heat-sealed and about 10 inches by 16 inches. Inside the package was a hard cylinder or "sausage-shaped" object that was about eight inches in length by three to four inches in diameter and was a dark color. Nance testified that he handled the package and that it had a slimy or greasy covering. Nance noted that he smelled cinnamon but not mustard. Agent Nance testified that the purpose of the cinnamon or mustard coating was to mask the scent [of the methamphetamine] from drug-sniffing dogs. Nance also testified that methamphetamine has a very definite odor and the first thing he does while working undercover is "to take a smell." Nance observed further that the appearance of methamphetamine could be from off-white to dark brown to yellow to pink to red. Agent Nance testified at trial that he had done three to four hundred undercover drug buys and had seen methamphetamine many times before. Nance testified that he was convinced the substance shown to him by appellant was methamphetamine. However, Nance also testified that he could not say with 100% certainty that the packaged substance was methamphetamine.

After looking at the package, Nance indicated to appellant that he was going to

retrieve the money. Once he exited appellant's vehicle, Nance signaled to the surveillance officers to move in and arrest appellant. Nance did not have the alleged methamphetamine in his possession. As the surveillance officers approached appellant's vehicle in unmarked squad cars, appellant accelerated forward, damaging a police vehicle, and drove off. Several officers gave chase, but appellant managed to escape. While driving, appellant threw the alleged methamphetamine out the window of his vehicle.

Chantharath was arrested at the scene and told Agent Nance that he had provided appellant with a pound of methamphetamine to sell to Nance. Appellant was arrested nine days later and charged with three counts of first-degree controlled substance crime: aiding and abetting the sale of ten or more grams of a mixture containing methamphetamine in violation of Minn. Stat. §§ 152.021, subds. 1(1) and 3, and 609.05 (2000); conspiracy to sell ten or more grams of a mixture containing methamphetamine in violation of Minn.Stat. §§ 152.021, subds. 1 and 3, and 152.096 (2000); possession of 25 or more grams of a mixture containing methamphetamine in violation of Minn.Stat. § 152.021, subds. 2(1) and 3 (2000). Appellant was also charged with fleeing a peace officer in a motor vehicle in violation of Minn. § 609.487, subd. 3 (2000). In an amended complaint, appellant was also charged with one count of first-degree criminal damage to property in violation of Minn.Stat. § 609.595, subds. 1(1), (3) (2000). Agent Nance interviewed appellant, who admitted that the substance he tried to sell Nance was methamphetamine he obtained from Chantharath. In an apparent attempt to obtain leniency, appellant contacted Nance on December 31, 2000, and offered to take him to the location where appellant had thrown the alleged methamphetamine out of his vehicle. Agent

Nance, along with appellant, searched the area but found nothing. Approximately one week later, Nance again searched the location, but again without success. The alleged methamphetamine was never recovered.

At the omnibus hearing on June 11, 2001, appellant moved the trial court for an order dismissing the charges for lack of probable cause because the alleged methamphetamine was not actually in evidence and had therefore never been scientifically tested or weighed. Appellant's motion was denied. On February 20 and 21, 2002, a jury trial was held. At the close of trial, appellant's motion for directed verdict was denied, and the matter was submitted to the jury. The jury found appellant guilty of all charges. Appellant was sentenced on the possession count and for fleeing a police officer. This appeal follows.

## ISSUE

Was the evidence legally sufficient to convict appellant of first-degree controlled substance crime when the alleged methamphetamine was never recovered and therefore never scientifically tested or weighed?

## ANALYSIS

■ Appellant argues that the trial court erred by not dismissing the complaint for lack of probable cause because the alleged methamphetamine was never recovered, and therefore the state failed to produce scientific evidence demonstrating beyond a reasonable doubt the identity and the weight of the methamphetamine he was charged with possessing and selling. A claim that the trial court erred in failing to dismiss a complaint for lack of probable cause made after there has been a trial and a conviction is construed as a claim that the evidence was insufficient to convict. *See State v. Holmberg,* 527

N.W.2d 100, 103 (Minn.App.1995) (stating that appellant's probable cause argument was not barred but was irrelevant), *review denied* (Minn. Mar. 21, 1995). This is because the evidentiary standard for a conviction is much higher than that for probable cause. *See, e.g., State ex rel. Hastings v. Bailey,* 263 Minn. 261, 266, 116 N.W.2d 548, 551 (1962) (noting that at a preliminary hearing, the state need not prove guilt beyond a reasonable doubt). Accordingly, we review appellant's appeal as a sufficiency-of-the-evidence challenge.

■ In considering a claim of insufficient evidence, this court's review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict that they did. *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989). We must assume the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989). We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *State. v. Alton,* 432 N.W.2d 754, 756 (Minn.1988).

## I. Identity of the controlled substance

A person is guilty of a controlled substance crime in the first degree if the person unlawfully possesses one or more mixtures of a weight of 25 grams or more containing cocaine, heroin, or methamphetamine. Minn.Stat. § 152.021, subd. 2(1) (2000). Appellant argues that the evidence is insufficient to convict him of first-degree controlled substance crime because the alleged methamphetamine necessary for a conviction was not sufficiently identified or weighed. The state counters that the evidence was sufficient to find that appellant possessed more than 25 grams of methamphetamine because of appellant's contemporaneous representations to Agent Nance and because of appellant's confession that the substance he gave to Nance was one pound of methamphetamine. We disagree.

■ Under Minnesota law, proof of the actual identity of the controlled substance is required. *State v. Vail,* 274 N.W.2d 127, 134 (Minn.1979); *State v. Dick,* 253 N.W.2d 277, 279 (Minn.1977). No minimum evidentiary requirements have been prescribed in identification cases and the sufficiency of the evidence is examined on a case-by-case basis. *Vail,* 274 N.W.2d at 134. Here, the "sausage-shaped" package containing the alleged methamphetamine was never recovered and therefore not scientifically tested by the state to ensure that the package appellant offered to sell Nance in fact contained methamphetamine. Our analysis, however, does not end here because it is permissible to ascertain the identity of a controlled substance from nonscientific evidence. *See Vail,* 274 N.W.2d at 137.

The state's nonscientific evidence is appellant's contemporaneous representations to Agent Nance. During the undercover operation, appellant made several representations to Nance that suggested the "sausage-shaped" package contained methamphetamine. Appellant informed Nance that the alleged methamphetamine was in the trunk of a car belonging to Chantharath. Appellant also showed Nance a clear plastic baggie containing a yellowish-brown substance, which Nance understood to be a sample of the methamphetamine he was about to purchase. Agent Nance overheard appellant say in a call to Chantharath, "Ten for one," which Nance testified he understood to mean $10,000 for one pound of methamphetamine. Further,

when appellant showed Nance the package after he had retrieved it from the trunk of Chantharath's car, appellant stated to Nance, "See, it is covered in cinnamon and mustard," which Agent Nance testified is commonly done to mask the scent of methamphetamine.

We acknowledge that this is compelling evidence and presents a strong inference that the "sausage-shaped" package in fact contained methamphetamine. But appellant's representations to Agent Nance are supported only by appellant's belief that the package contained methamphetamine. The supreme court, however, has previously held that a defendant's belief in an identification case is insufficient evidence to support a determination of guilt. *See Vail*, 274 N.W.2d at 133–34 (statement of defendant quoted by the state's witness identifying the product as not only marijuana but "Mexican-grade" marijuana was only an assertion of defendant's belief). We also note that there is no evidence in the record, for example, that appellant prepared the package that was ultimately presented to Nance as methamphetamine and therefore knew first-hand its contents. Appellant's first exposure to the package occurred when he retrieved the package from the trunk of Chantharath's car at the scene of the undercover drug buy.

■ Furthermore, we decline to rely on appellant's belief that methamphetamine was contained in the package because it is not uncommon for drug dealers to substitute placebos in place of the real drug. This practice is common enough to warrant its own criminal statute. *See* Minn. Stat. § 152.097 (2002) (sale of simulated controlled substance). Therefore, we conclude that appellant's representations to Agent Nance that the "sausage-shaped" package contained methamphetamine are

supported only by appellant's belief that the package contained methamphetamine, and that appellant's belief is legally insufficient to identify the contents of the package as methamphetamine.

■ The state also notes that Agent Nance has been on hundreds of undercover drug buys and testified that he has seen methamphetamine many times and was convinced that the package contained methamphetamine. He testified that he held the package in his hand and the package had a slimy or greasy feel consistent with methamphetamine packaging. Nance also testified that after appellant ripped a corner of the package open he saw a brown substance he believed to be methamphetamine and smelled cinnamon, but not the distinctive ammonia odor he normally relies on to identify methamphetamine. But there is no evidence in the record that Nance tasted the package contents, attempted to get a closer look at what was inside the package, or did any kind of at-the-scene testing to verify the package contained methamphetamine. Nance also testified that he could not be 100% certain that the package contained methamphetamine. We cannot say that Nance's observations establish, beyond a reasonable doubt, that the contents of the "sausage-shaped" package was in fact methamphetamine.

■ The state next argues that appellant's confession sufficiently supports his conviction. Following his arrest, while being interviewed by Agent Nance, appellant admitted that the package he offered to sell Nance contained methamphetamine. The states relies on Minn.Stat. § 634.03 (2000) for the proposition that a confession by a defendant is sufficient to warrant a conviction if the evidence establishes that the offense charged has been committed.[1]

---

1. Minn.Stat. § 634.03 provides that a defendant's confession is not sufficient to warrant a

The statute's purpose is to discourage coercively acquired confessions and to make the admission reliable. *State v. Brant*, 436 N.W.2d 468, 470 (Minn.App.1989). It is not required that each element of the offense be independently corroborated to meet the statute's standard. *Id.* at 471. All the statute requires is independent evidence of attendant facts or circumstances from which a jury may infer the trustworthiness of the confession. *Id.*

The state contends it has met this standard because appellant's confession was corroborated by Chantharath's admission to Nance that he furnished appellant a pound of methamphetamine to use in the undercover drug buy. But as we have already discussed, a person's belief that the controlled substance is what he represents it to be, without more, is legally insufficient evidence to identify the drug in an identification case. *Cf. Dick*, 253 N.W.2d at 279 (holding evidence justified jury's conclusion that the substance was marijuana where state criminalist examined the substance and testified that it was marijuana, the undercover officer testified the substance gave off an odor which he concluded was the odor of burning marijuana, and the defendant represented the substance to be marijuana).

Here, the record indicates that Chantharath obtained the alleged methamphetamine from someone else and later made the package available to appellant to facilitate the sale to Agent Nance. Like appellant's representation, Chantharath's admission that the package he provided to appellant contained methamphetamine is supported only by Chantharath's belief that what he received from his source was in fact methamphetamine. There is no evidence in the record, however, that Chantharath independently tested the substance obtained from his source, or that testing was performed in his presence to verify that the substance was in fact methamphetamine. Therefore, we conclude that Chantharath's admission to Nance that he provided appellant with the alleged methamphetamine does not establish that appellant was guilty of first-degree controlled substance crime.

Next, the state cites *State v. Voss*, 192 Minn. 127, 131, 255 N.W. 843, 845 (1934), for the proposition that a defendant may be convicted on the basis of his confession when the confession is corroborated by the testimony of an accomplice. The state contends that Chantharath, appellant's accomplice, corroborated appellant's confession when Chantharath admitted to Agent Nance that he provided appellant with the alleged methamphetamine. But *Voss* requires that the accomplice actually testify in order for his corroboration to serve as the basis of a conviction. Here, Chantharath did not testify at the trial; therefore, he was not subject to cross-examination. The jury was never presented with the opportunity to make its own assessment of Chantharath's credibility and decide what weight, if any, to give to his testimony. Therefore, appellant's confession was not corroborated by accomplice testimony because appellant's accomplice did not testify.

## 2. Weight of the controlled substance

Lastly, the state argues that its failure to conduct any scientific testing to determine the weight of the controlled substance is not fatal to its case. The state contends that the weight of the "sausage-shaped" package was established by the representations of appellant and Chantharath that the package was a pound of methamphetamine; and by the fact that $10,000

conviction without evidence that the offense

charged has been committed.

is the going rate for one pound of methamphetamine. But appellant argues that under *State v. Robinson*, 517 N.W.2d 336 (Minn.1994), the state must establish the requisite statutory weight through scientific testing. We find appellant's argument persuasive.

In *Robinson* the defendant was found in possession of a plastic bag containing what appeared to be thirteen individual packets of crack cocaine. *Id.* at 338. The state's expert chemist randomly selected six or seven of the thirteen packets, emptied them into a single container, tested samples of the resulting mixture, and determined that the mixture was 87.6 percent cocaine base. *Id.* The Minnesota Supreme Court reversed the defendant's conviction and remanded the case for sentencing for second-degree controlled substance crime (sale of three grams or more). *Id.* at 340. The court noted that "there seems to be no good reason why a sufficient quantity of the mixture [of cocaine] should not be scientifically tested so as to establish beyond a reasonable doubt an essential element of the crime charged." *Id.* at 339. The court concluded that on the facts of the case, the material suspected of containing cocaine was not homogenously packaged as to permit random sample testing to establish that the material contained ten or more grams of cocaine. *Id.* at 340.

 Despite this holding, the state argues that *Robinson* does not foreclose a conviction here because nothing in *Robinson* suggests that scientific testing is the only permissible means to establish the weight of a controlled substance for purposes of meeting the statutory requirements. We disagree. In reaching its decision to reverse the conviction in *Robinson*, the supreme court looked at the increase in sentences for drug of-

fenses in recent years. It noted that a first-degree controlled substance crime is now a severity level VIII offense, with a presumptive 86-month sentence even with a zero criminal history score. *Id.* at 339. The court reasoned that where a penalty as serious as 10 years' imprisonment may hinge on a gram, it was not too much to require scientific testing to establish the requisite weight. *Id.* Here, appellant was sentenced to a prison term of 110 months based on a criminal history score of two. What *Robinson* makes abundantly clear is that given the harshness of sentencing in drug cases, the state must be held to its burden of proof beyond a reasonable doubt. Accordingly, we hold that, where weight is an element of the drug offense, scientific testing is required to establish the requisite weight, and that the evidence presented here is legally insufficient to establish the weight of the purported controlled substance.

## DECISION

Because the evidence is legally insufficient to identify the contents in the "sausage-shaped" package as methamphetamine, and because the package was not scientifically tested to ascertain its weight, the jury could not reasonably conclude that the state proved beyond a reasonable doubt both the identity and weight of the controlled substance. Accordingly, we reverse appellant's conviction for first-degree controlled substance crime and remand to the trial court for sentencing on the conspiracy or aiding-and-abetting convictions.

**Reversed and remanded.**

FORSBERG,* Judge (dissenting).

I respectfully disagree with the court that appellant's confession was not suffi-

---

* Retired judge of the Minnesota Court of Ap- peals, serving by appointment pursuant to

ciently corroborated by accomplice testimony to sustain his conviction for first-degree controlled substance crime. While Chantharath did not testify at the trial, his corroboration of defendant's confession was presented to the jury via the testimony of agent Nance. Agent Nance testified that following his arrest, Chantharath admitted to him the he had given appellant the pound of methamphetamine that appellant offered to sell to agent Nance. This testimony is consistent with appellant's confession wherein he admitted that he tried to sale agent Nance a pound of methamphetamine, which he obtained from Chantharath. The essential matters admitted in appellant's confession, namely that the controlled substance was methamphetamine and that it weighed a pound, were corroborated by his accomplice, Chantharath. The jury adequately received evidence from appellant's accomplice corroborating appellant's confession. I would affirm the conviction.