STATE of Minnesota, Respondent,

v.

Willie Earl ROBINSON, Petitioner, Appellant.

No. C4–93–115.

Supreme Court of Minnesota.

June 10, 1994.

John M. Stuart, State Public Defender, Lawrence Hammerling, Deputy State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Michael O. Freeman, Hennepin County Atty., Linda K. Jenny, Asst. Hennepin County Atty., Minneapolis, for respondent.

## OPINION

SIMONETT, Justice.

We reverse defendant's conviction for selling 10 grams or more of a cocaine mixture because the proof fails to establish beyond a reasonable doubt that the total weight of the mixture was 10 grams or more. We remand for resentencing for a second degree offense of selling a mixture of a lesser weight (3 grams or more); and we affirm the trial court's instruction on constructive possession.

The morning of January 20, 1992, at about 3:30 a.m., after observing a group of men loitering in a parking lot behind an apartment building, the police stopped a car that left the parking lot. The driver was defendant Willie Earl Robinson. Ricky Lewis was in the front passenger seat.

When frisked, defendant was found to have a digital pager in his pocket and a large amount of cash tucked in his sock. During the frisk, which took place outside the car, the police officer saw Lewis reach over to where defendant had been sitting and touch a plastic bag partially stuffed in the crease where the back of the seat meets the seat cushion. The officer seized the bag, which contained what appeared to be packets of crack cocaine. A public health chemist tested a random sampling of the packets, and these tests were positive for cocaine.

Defendant Robinson was charged with a number of counts, including one count of first degree *sale* of a controlled substance (10 grams or more) and one count of second degree *possession* of a controlled substance (6 grams or more).[1] After a jury trial in July 1992, defendant was found guilty on both drug counts, as well as for failure to have tax stamps for a controlled substance.[2] The trial judge entered convictions for all three drug-related offenses and sentenced defendant on all three offenses. The first degree sale offense was the controlling sentence, and the

---

1. Under Minn.Stat. § 152.021, subd. 1(1) (Supp. 1991), a person is guilty of sale of a controlled substance in the first degree if "on one or more occasions within a 90–day period the person unlawfully sells one or more mixtures of a total weight of ten grams or more containing cocaine base." To "sell" means "(1) to sell, give away, barter, deliver, exchange, distribute or dispose of to another, or to manufacture; or (2) to offer or agree to perform an act listed in clause (1); or (3) to possess with intent to perform an act listed in clause (1)." Minn.Stat. § 152.01, subd. 15a (1992).

Under Minn.Stat. § 152.022, subd. 2(1) (1990), a person is guilty of a controlled substance crime in the second degree if "the person unlawfully possesses one or more mixtures of a total weight of six grams or more containing cocaine base."

2. *See* Minn.Stat. §§ 297D.04, 297D.09 (Supp. 1991). Defendant was also charged with one count of unlawful possession of a pistol. (The pistol was found in the glove compartment.) At trial, defendant was acquitted of the weapons charge. The conviction for the tax stamp offense has not been appealed.

judge ordered a 90–month commitment to the Commissioner of Corrections.

In an unpublished opinion, the court of appeals vacated the second degree possession conviction pursuant to Minn.Stat. § 609.04 (1992) (may not convict of *both* greater and lesser included offense for the same conduct), but affirmed defendant's other convictions. We granted defendant's petition for further review of the first degree drug offense.

At trial, the public health chemist for the City of Minneapolis described her testing of the contents of the large, clear plastic bag found in the front seat of the car. She testified that the bag contained 13 clear plastic packets, each containing a piece of a white substance. She said she emptied 6 or 7 of the 13 packets into a container, tested samples of the mixture, and thereby determined the mixture was 87.6 percent cocaine base.[3] The chemist testified that scientific and industry protocol will accept a sampling of 10 percent of the material as reliable to ascertain the nature of the entire mixture; she further stated she would normally sample 10 to 20 percent "of that number of packets" in a case like this, but here she actually sampled about half the packets.

On cross-examination, the witness admitted that "there are numerous situations" where she has tested questionable material and found it not to be cocaine. Some of the common substitutes for cocaine, she said, were baking soda, powdered sugar, and soap pieces. Indeed, *Spreigl* evidence was admitted at trial that, in 1988, defendant Robinson had offered a plain-clothes officer "some rock" which turned out to be soap. The defense did not offer any evidence or witnesses.

█ The critical issue here is whether the state's evidence is sufficient to sustain a conviction for sale of 10 grams or more of a controlled substance when the state has tested less than 10 grams of the substance seized. We conclude the proof fails.

The state tested at most 7 of the 13 packets that were in the large plastic bag. Assuming the packets were approximately equal in weight, then, as defendant points out, the state tested less than 9 grams of the substance involved (⁷⁄₁₃ of 16.7 grams equals 8.99 grams). The state does not dispute this calculation but argues more testing was not required.

The state argues that the random testing of 7 packets, when considered along with the circumstantial evidence, is sufficient to prove beyond a reasonable doubt that the weight of the cocaine mixture in the large bag equaled or exceeded 10 grams. The supporting circumstantial evidence, says the state, consists of several facts: that the 13 white "pieces" were individually wrapped in plastic and all the pieces were inside one larger plastic bag; that this is a common method of packaging crack cocaine; that crack is typically sold in $20 or $50 units and defendant Robinson had fourteen $20 bills and one $50 bill in his sock; and, finally, that defendant was carrying a beeper and was arrested shortly after a report of drug dealing in a parking lot at 3:30 a.m.

It seems to us that, except for the fact the 13 packets were all in one plastic bag, the circumstantial evidence tends to prove defendant Robinson was a drug dealer, but not what was in the untested packets. In *State v. Vail*, 274 N.W.2d 127 (Minn.1979), cited by both parties, the issue was the identity of 225 pounds of seized material claimed by the state to be marijuana. The trial judge, in a bench trial, after listening to disputed expert testimony, concluded the conducted tests were "probably inadequate" to identify the material as marijuana beyond a reasonable doubt, but found other circumstantial evidence was sufficient to establish an identification. On appeal, a divided court reversed the conviction, holding that the circumstantial evidence was insufficient. This court said, "We have not prescribed minimum evi-

---

**3.** The chemist's testimony is not as clear as it might be. It appears, however, that the chemist put the contents of the 6 or 7 packets in a weighing dish, and then removed samples from the dish for testing. On cross-examination, the chemist agreed that if one of the packets had contained "a lot of cocaine" and three or four other packets contained only baking soda, the tests would still have been positive.

The testing includes infrared analysis, gas chromatography and G.C. mass spectrometry.

dentiary requirements in identification cases, preferring to examine the sufficiency of the evidence on a case-by-case basis." *Id.* at 134. In any event, neither *Vail* nor *State v. Mattson,* 359 N.W.2d 616 (Minn.1984), also discussed by the parties, is precisely on point.

Intermediate appellate courts in Illinois and Florida, however, have dealt with the issue of the adequacy of random sample testing. In *People v. Kaludis,* 146 Ill.App.3d 888, 100 Ill.Dec. 382, 387, 497 N.E.2d 360, 365, *appeal denied* (Ill., Dec. 4, 1986), it was held that random sampling of 100 tablets or pills (of the same size, diameter, roundness, thickness, color, hardness and markings) was sufficient to establish the requisite weight required for the drug offense. On the other hand, in *People v. Hill,* 169 Ill.App.3d 901, 120 Ill.Dec. 574, 582, 524 N.E.2d 604, 612, *appeal denied,* 122 Ill.2d 585, 125 Ill.Dec. 228, 530 N.E.2d 256 (1988), the same court held that the state failed to prove possession of more than 30 grams of controlled substance when the state tested only 21 grams of a white powder substance, apparently by testing 2 of 54 packets believed to contain cocaine. The *Hill* court stated that "[w]here there is a lesser included offense for possessing a smaller amount, the weight of the substances containing a drug is an essential element of a charge of possession. * * * Where separate bags or containers of suspected drugs are seized, a sample from each bag or container must be conclusively tested to prove that it contains a controlled substance." *Id.,* 120 Ill.Dec. at 581, 524 N.E.2d at 611. *Compare Ross v. State,* 528 So.2d 1237, 1241 (Fla.App.1988) (random sampling of 2 of 92 plastic packets insufficient to prove the requisite weight of 28 grams or more of cocaine), *rev. denied,* 537 So.2d 569 (Fla. 1988), *with Bond v. State,* 538 So.2d 499, 500 (Fla.App.1989) (random sampling of 139 small plastic bags of suspected rock cocaine held sufficient because rock cocaine "more closely resembles pills than powder").

The court of appeals in this case concluded it was sufficient that "[t]he substance seized from Robinson's car was wrapped individually in separate bindles, and the bindles were contained in a single plastic baggie," and further, that "[t]here was no evidence the bindles lacked uniformity in size, shape, or density." Arguably, in this situation, the trier of fact could infer that the untested packets contained the same substance as the tested seven packets; on the other hand, this inference is countered by the evidence that at times a dealer will package a cocaine substitute.

■ We conclude that random sampling in a case such as this one is insufficient to establish the total weight required of the mixture containing a controlled substance. The weight of the mixture is an essential element of the offense charged; like every other essential element, it must be proven by the state and proven beyond a reasonable doubt. *E.g., State v. Ewing,* 250 Minn. 436, 442, 84 N.W.2d 904, 909 (1957). "Protocol" notwithstanding, there seems to be no good reason why a sufficient quantity of the mixture should not be scientifically tested so as to establish beyond a reasonable doubt an essential element of the crime charged.

The trouble with determining the required weight of a mixture by extrapolation from random samples is that the extrapolation does not take into account the fact that, in the case of substances not homogeneously packaged, drug dealers are known to substitute placebos for the real thing. Indeed, substitution is apparently common enough that it has achieved a criminal status of its own. *See* Minn.Stat. § 152.097 (1992) (sale of simulated controlled substance).

Moreover, the fact that the sentences for drug offenses have greatly increased in recent years persuades us that the state should be required, in cases such as this, to test enough of the substance mixture to prove scientifically the requisite weight. As defendant points out, a first degree controlled substance crime is now a severity level VIII offense, with a presumptive 86–month sentence even at a zero criminal history score. By comparison, it appears that the most serious controlled substance offense under the 1982 statute was the sale of heroin,[4] then ranked at severity level VI and punishable by a presumptive 21–month stayed commitment

4. Minn.Stat. §§ 152.02, subd. 2(2), 152.09, subd. 1(1), 152.15, subd. 1(1) (1982).

at the zero criminal history level. A sale of cocaine in 1982 was a severity level III offense, and even with a criminal history score of 3, the presumptive 1982 sentencing guideline was only 19 months, stayed. In this case, defendant received a 90–month sentence for his first degree offense based on a criminal history score of 3, and this was a 32–month downward departure from then-current presumptive guidelines. Where a penalty as serious as 10 years' imprisonment may hinge on a gram, it seems not too much to require scientific testing to establish the requisite weight.

There may be instances where the seized material consists of pills or tablets where the individual items are so alike and the risk of benign substitutes so unlikely that random testing may legitimately permit an inference beyond a reasonable doubt that the requisite weight of the whole mixture is established. Blotter acid may be another instance. But this is a different case. What we have here are individually wrapped plastic packets with some amount of some kind of white substance in each, whose packaging gives no assurance that the same substance was wrapped in each packet. The degree of homogeneous packaging needed for random sampling is not present and, therefore, the conviction for the first degree offense (sale of 10 grams or more) must be set aside.

Defendant concedes that the state did test for more than 3 grams of the material seized as positive for cocaine, a lesser included offense. Consequently, we remand to the trial court for sentencing for sale of a controlled substance in the second degree under Minn. Stat. § 152.022, subd. 1(1) (1992) (sale of 3 grams or more).

█ Before there can be a remand, however, we must dispose of a second issue raised by defendant, namely, whether the trial court erred in its instruction to the jury on constructive possession, so as to require a new trial.

The trial court instructed the jury according to CRIMJIG 20.04:

> In order for defendant to have possessed a controlled substance it is not necessary that it have been on defendant's person.

Defendant possessed a controlled substance if it was in a place under his control to which other people did not normally have access or if defendant was knowingly exercising dominion and control over it.

*See* 10A Minn. Dist. Judges Ass'n, *Minnesota Practice,* CRIMJIG 20.04 (3d ed. 1990).

Defendant requested the second sentence of the instruction be modified to read: "Defendant possessed a controlled substance if it was in a place under his *exclusive* control * * *." (Emphasized word added.)

In *State v. Florine,* 303 Minn. 103, 105, 226 N.W.2d 609, 611 (1975), as defendant points out, we said that to prove constructive possession the state had to show either (a) the substance was in a place under defendant's "exclusive" control to which others did not normally have access, or (b) if in a place where others had access, that the defendant was at the time consciously or knowingly exercising dominion and control over the substance in question.

We think the CRIMJIG instruction adequately conveys to the jury the requirements for constructive possession without the need to add that the defendant's control must be "exclusive." Indeed, it seems somewhat inconsistent to speak of control as "exclusive" when others have access—albeit not normally—to the same place. We might add that the jury is told alternatively that possession may be found if the defendant was knowingly exercising dominion and control. *See State v. LaBarre,* 292 Minn. 228, 237, 195 N.W.2d 435, 441 (1972) (dominion may be shared with others). It was not error to give CRIMJIG 20.04.

Reversed in part and affirmed in part and remanded for sentencing.