*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1025**

State of Minnesota,
Respondent,

vs.

Daniel Dean Kruse,
Appellant.

**Filed April 27, 2015
Affirmed
Schellhas, Judge**

St. Louis County District Court
File No. 69VI-CR-13-1359

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Duluth, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, David W. Merchant, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Hooten, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Appellant challenges the sufficiency of the evidence for his conviction of fifth-degree controlled-substance crime. We affirm.

**FACTS**

On September 14, 2013, an anonymous informant disclosed to Eveleth Police Officer Anthony Goulet the location of appellant Daniel Dean Kruse. Officer Goulet believed Kruse to have an active felony warrant and contacted dispatch for confirmation. Officer Christopher Melin, who heard dispatch confirm the active felony warrant, arrived at Officer Goulet's location, and both officers proceeded to Kruse's location. Officer Goulet spotted Kruse and called out to him by name. Kruse ran for approximately a block and a half, despite multiple orders by Officer Goulet to stop. When Kruse fell, the officers apprehended him.

While performing a search incident to arrest, the officers discovered a glass marijuana pipe, an aluminum marijuana pipe, a knife, and a small plastic container, which held 21 blue round pills, on Kruse's person. Of the blue pills, 12 were marked with a "V" on one side and a "2684" on the other side, and 9 were marked with a "V" on one side and a "10" on the other side. Kruse told officers that he got the pills from a friend and that the pills were for C.B., with whom officers believed Kruse had had relations in the past. Using the website Drugs.com, Officer Goulet identified the pills as "Diazepam 10 mg," a controlled substance.

Respondent State of Minnesota charged Kruse with fifth-degree controlled-substance crime. Kruse waived his right to a jury trial, and the parties submitted the case to the district court on stipulated facts under Minn. R. Crim. P. 26.01, subd. 3. The parties agreed that the court could consider the police report, to which printouts from Drugs.com were attached. The parties also stipulated that C.B. had a prescription for diazepam and

that the blue pills were not contained in a prescription bottle when the officers found them on Kruse's person. The parties agreed to a sentence and waived a sentencing hearing in the event of a guilty finding. The district court found Kruse guilty of fifth-degree controlled-substance crime, imposed a 13-month sentence, stayed the sentence for 12 months, placed Kruse on probation, and immediately discharged him from probation, based on the parties' agreement.

This appeal follows.

## DECISION

Kruse argues that the evidence is insufficient to support his conviction of fifth-degree controlled-substance crime. "[Appellate courts] use the same standard of review in bench trials and in jury trials in evaluating the sufficiency of the evidence." *State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011). "[Appellate courts] review the evidence to determine whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a [fact-finder] could reasonably conclude that the defendant was guilty of the offense charged." *State v. Fairbanks*, 842 N.W.2d 297, 306–07 (Minn. 2014) (quotation omitted). Appellate courts undergo "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to permit the [fact-finder] to reach the verdict which [it] did." *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012) (quotation omitted).

"If a conviction, or a single element of a criminal offense, is based solely on circumstantial evidence," *Fairbanks*, 842 N.W.2d at 307, "[appellate courts] apply a two-step analysis in determining whether [that] circumstantial evidence is sufficient to

3

support a guilty verdict," *State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014). The first step is to "identify the circumstances proved." *Palmer*, 803 N.W.2d at 733 (quotation omitted). The second step is to "examine the reasonableness of all inferences that might be drawn from the circumstances proved, including inferences consistent with a hypothesis other than guilt." *Id.* (quotations omitted).

Under the first step, "[appellate courts] assume that the jury resolved any factual disputes in a manner that is consistent with the jury's verdict. Put differently, [appellate courts] construe conflicting evidence in the light most favorable to the verdict . . . ." *Moore*, 846 N.W.2d at 88 (quotation and citation omitted). Under the second step, "[appellate courts] examine independently the reasonableness of the inferences that might be drawn from the circumstances proved." *Id.* (quotations omitted). "To affirm the conviction, [appellate courts] must conclude that the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt, not simply that the inferences that point to guilt are reasonable." *Id.* (quotations omitted). "Circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (quotation omitted). "[Appellate courts] give no deference to the fact finder's choice between reasonable inferences." *State v. Andersen*, 784 N.W.2d 320, 329–30 (Minn. 2010) (quotation omitted).

"A person is guilty of controlled substance crime in the fifth degree" if "the person unlawfully possesses one or more mixtures containing a controlled substance classified in

4

Schedule I, II, III, or IV." Minn. Stat. § 152.025, subd. 2(a) (2012). The elements of unlawful possession of a controlled substance are that the defendant (1) consciously possessed a controlled substance, either physically or constructively, and (2) knew the nature of the substance. *State v. Florine*, 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975); *State v. Ali*, 775 N.W.2d 914, 918 (Minn. App. 2009), *review denied* (Minn. Feb. 16, 2010). In this case, the state presented circumstantial evidence of both the identity of the alleged controlled substance and Kruse's knowledge of the identity of the substance. Kruse challenges the sufficiency of the state's evidence.

*Nature of pills*

Kruse first challenges the sufficiency of the evidence to prove beyond a reasonable doubt that the blue pills contained diazepam. "[The supreme court] ha[s] not prescribed minimum evidentiary requirements in identification cases, preferring to examine the sufficiency of the evidence on a case-by-case basis." *State v. Vail*, 274 N.W.2d 127, 134 (Minn. 1979). But "Minnesota law requires proof of the actual identity of the substance, the defendant's belief is insufficient." *Id.*

In this case, the parties stipulated that the blue pills were not contained in a prescription bottle when they were found in Kruse's possession and that C.B. had a valid prescription for diazepam. Viewed in the light most favorable to the verdict, *Moore*, 846 N.W.2d at 88, the evidence proved the following additional circumstances: (1) Kruse fled when confronted by police officers; (2) Kruse possessed a knife and contraband; (3) the 21 pills consisted of two varieties marked as diazepam; (4) the pills belonged to C.B.; (5) Kruse had had past relations with C.B.; and (6) Kruse told police officers that he got

5

the pills from a friend and that they were for C.B. These stipulated facts and proven circumstances are consistent with Kruse's guilt because they support a rational hypothesis that the pills were prescription diazepam pills for C.B.

Kruse compares this case to *State v. Olhausen*, 681 N.W.2d 21 (Minn. 2004), and *In re Welfare of J.R.M.*, 653 N.W.2d 207 (Minn. App. 2002), arguing that this case does not involve the types of circumstances that have supported convictions of controlled-substance crimes when the identity of the substance was challenged. Indeed, the circumstances proved in *Olhausen* and *J.R.M.* are not the same as the circumstances in this case. In *Olhausen*, the circumstances proved included

> (1) respondent's agreement to sell 1 pound of methamphetamine, (2) respondent's phone calls to arrange the sale, (3) respondent's representation of a small sample to [an officer], a sample that [the officer] believed to be authentic methamphetamine, (4) respondent's various statements, including an offer to sell "ten for one," or 1 pound of methamphetamine for $10,000, (5) respondent's various indications that the package he obtained from [his friend] was 1 pound of methamphetamine, (6) [the friend's] representations to the police that he furnished respondent with 1 pound of methamphetamine, and (7) respondent's dramatic flight from the scene of the incident.

681 N.W.2d at 23, 25–26. In *J.R.M.*, the circumstances proved included the following:

> A witness saw appellant smoking a substance and passing the substance around between pinched fingers. Further, a substance that smelled like marijuana was found in one of the boy's shoes. The assistant principal and liaison officer testified at the adjudication hearing and described the substance as a "joint." Moreover, the officer testified that appellant smelled of marijuana and that appellant's eyes were bloodshot and watery. Finally, both the assistant principal and liaison officer testified that appellant admitted to smoking marijuana.

6

653 N.W.2d at 210–11. Notably, the circumstances proved in *Olhausen* are different from the circumstances proved in *J.R.M.* and from those proved in this case. "[W]here the identification of the drug is in question, the sufficiency of the evidence is examined on a case-by-case basis." *Olhausen*, 681 N.W.2d at 29. Because we examine the evidence on a case-by-case basis, the lack of similarity between the facts in *Olhausen* and *J.R.M.* and the facts in the case before us does not support Kruse's insufficiency-of-the-evidence argument.

Kruse next relies on *State v. Robinson*, 517 N.W.2d 336 (Minn. 1994), for his argument that "the fact that the pills are marked as diazepam does not eliminate the rational possibility that they were, in fact, placebos." Kruse's reliance on *Robinson* is misplaced. In *Robinson*, the defendant challenged his conviction of first-degree sale of a controlled substance on the basis that the substance did not weigh at least ten grams. 517 N.W.2d at 337–38. The substance was a collection of 13 white "pieces" individually wrapped in plastic, of which only 6 or 7 were tested for identification and determined to contain cocaine base. *Id.* at 338. The supreme court assumed that the weight of the tested "pieces" was less than 9 grams and considered the circumstantial evidence adduced to prove the total weight of the substance, including

> that the 13 white "pieces" were individually wrapped in plastic and all the pieces were inside one larger plastic bag; that this is a common method of packaging crack cocaine; that crack is typically sold in $20 or $50 units and defendant Robinson had fourteen $20 bills and one $50 bill in his sock; and, finally, that defendant was carrying a beeper and was arrested shortly after a report of drug dealing in a parking lot at 3:30 a.m.

*Id.* The court rejected the state's argument that these circumstances were sufficient to prove the identity of the "pieces" that were not tested and "conclude[d] that random sampling in a case such as this one is insufficient to establish the total weight required of the mixture containing a controlled substance." *Id.* at 338–39. The court noted that "in the case of substances not homogeneously packaged, drug dealers are known to substitute placebos for the real thing" and referenced the Minnesota Legislature's decision to criminalize the sale of simulated controlled substances under Minn. Stat. § 152.097 (1992). *Id.* at 339. But the court also stated that "[t]here may be instances where the seized material consists of pills or tablets where the individual items are so alike and the risk of benign substitutes so unlikely that random testing may legitimately permit an inference beyond a reasonable doubt that the requisite weight of the whole mixture is established." *Id.* at 340.

In this case, the circumstantial evidence proved that Kruse possessed blue pills marked as diazepam, not "some amount of some kind of white substance." *See id.* at 340. Furthermore, the circumstantial evidence proved that the blue pills belonged to C.B. and that she had a valid prescription for diazepam, which is inconsistent with Kruse's hypothesis that the pills were manufactured to appear as diazepam, when in fact they were placebos or counterfeits. "[Appellate courts] will not overturn a conviction based on circumstantial evidence on the basis of mere conjecture." *Andersen*, 784 N.W.2d at 330 (quotation omitted). We conclude that the evidence was sufficient to prove beyond a reasonable doubt that the pills possessed by Kruse contained diazepam.

8

*Actual knowledge*

Kruse next challenges the sufficiency of the evidence to prove beyond a reasonable doubt that he had actual knowledge that the pills contained diazepam. "Possession crimes require proof that the defendant had actual knowledge of the nature of the substance in his possession." *Ali*, 775 N.W.2d at 918. "[P]roof that the defendant was aware that he possessed a controlled substance satisfies the [fifth-degree controlled-substance crime] statute's actual-knowledge requirement." *Id.* at 919.

Kruse attempts to undermine his conviction by highlighting the following allegedly erroneous factual finding by the district court: "By telling officers he had retrieved the substance from one residence with the intent to transport the substance to another individual, *Defendant admitted* he consciously possessed the substance and had actual knowledge of its nature." (Emphasis added.) We agree that the stipulated facts do not support the court's finding that Kruse admitted that he knew that the pills were a controlled substance. Arguably, the court's finding regarding Kruse's admission should be set aside. *See Vail*, 274 N.W.2d at 133 (stating that "the judge's findings of fact are entitled to the same weight on review as a jury verdict" and "will not be set aside unless clearly erroneous"). But setting aside the court's finding of an admission does not necessitate setting aside the court's finding that Kruse had actual knowledge that the pills were a controlled substance.

Kruse attempts to bolster the hypothesis that he possessed the pills without actual knowledge that they were a controlled substance by isolating the circumstances proved. He first argues that the stipulated fact that C.B. had a valid prescription for diazepam

9

does not foreclose the rational hypothesis that he did not know what the pills were and simply obtained them from a friend for her. He argues that his flight from police officers can rationally be explained by his outstanding warrant and his possession of other contraband at the time of flight. And he argues that he did not attempt to discard the pills, suggesting that he lacked knowledge that they were a controlled substance. But the hypothesis that Kruse did not know that the pills were a controlled substance is irrational in light of the combined circumstances that the pills were marked as diazepam, a prescription drug; the pills were for C.B., with whom Kruse had had past relations; the pills were in two varieties; the pills were in a nonprescription container when Kruse was arrested; Kruse possessed the pills while also possessing other drug paraphernalia and a knife; and Kruse ran when confronted by police officers.

We conclude that the stipulated facts and circumstances proved in this case support the hypothesis that Kruse had actual knowledge that the pills were a controlled substance. We also conclude that the circumstances proved in this case are consistent with guilt and inconsistent with any rational hypothesis except that of guilt.

**Affirmed.**