STATE of Minnesota, Respondent,

v.

Carlieke J. CARPENTER, Appellant.

A16-0170

Court of Appeals of Minnesota.

Filed 03/27/2017

Lori Swanson, Attorney General, St. Paul, Minnesota; and Michael O. Freeman, Hennepin County Attorney, Cheri A. Townsend, Assistant County Attorney, Minneapolis, Minnesota (for respondent).

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant).

Considered and decided by Hooten, Presiding Judge; Reilly, Judge; and Smith, Tracy M., Judge.

## OPINION

REILLY, Judge

Appellant argues that the district court abused its discretion by denying appellant's post-verdict motion for a judgment of acquittal following a court trial. Because we conclude that the district court abused its discretion by reading Minnesota Rule of Criminal Procedure 26.03, subdivision 18, section 3, in isolation, we reverse the decision of the district court that denied appellant's post-verdict motion for a judgment of acquittal. Because we also conclude that the state failed to prove beyond a reasonable doubt that the total weight of the controlled substance was ten grams or more, we reverse appellant's conviction and we remand for resentencing for a second-degree offense of selling a mixture of three grams or more. Finally, the district court did not abuse its discretion when it did not compel D.H., appellant's accomplice, to testify at trial.

## FACTS

After receiving information from a confidential reliable informant that D.H. was involved in drug activity, the Hennepin County Sheriff's Office investigators conducted surveillance at D.H.'s residence. One of the officers, Deputy Jason Hughes, observed two men leave D.H.'s residence and enter a silver Dodge Grand Caravan. The man who entered the driver's seat was known to officers as D.H., and the man who entered the passenger's seat was later identified as appellant Carlieke Carpenter. Deputy Hughes followed the Dodge Grand Caravan from D.H.'s residence to Minneapolis, where he observed the vehicle make three brief stops in a short period of time. At each stop, an unidentified individual approached the vehicle. Based on his years of experience and training, Deputy Hughes believed that the occupants of the vehicle were engaging in hand-to-hand drug transactions; but he was not in a position to directly observe the contact between D.H. and appellant, and the unidentified individuals. After the third exchange, Deputy Hughes stopped the Dodge Grand Caravan on suspicion of drug activity.

A second officer, Sergeant Fleck, approached the driver's side door as Deputy Hughes approached the passenger's side door. The officers ordered Carpenter to raise his hands and step out of the minivan. Carpenter initially complied, then temporarily moved his hands to his lap area, but raised his hands again when Deputy Hughes redirected him to do so. As Carpenter stepped out of the minivan, Deputy Hughes saw a "plastic baggie" containing "individually wrapped rocks" fall from Carpenter's "crotch area" to the front well of the passenger seat. Because Deputy Hughes suspected the bag contained narcotics, the officers seized the bag and arrested D.H. and Carpenter on suspicion of narcotics distribution. The state later charged Carpenter with first-degree aiding and abetting the sale of ten grams or more of heroin, in violation of Minneso-

ta Statutes section 152.021, subdivision 1(3) (2016), and first-degree aiding and abetting the possession of 25 grams or more of heroin, in violation of Minnesota Statutes section 152.021, subdivision 2(3) (2016).

Before transferring the seized substance to the Minnesota Bureau of Criminal Apprehension (the BCA) for testing, Deputy Cory McLouden conducted an initial test at the Hennepin County Sheriff's Office. Deputy McLouden determined that the bag seized contained 64 individually wrapped packets of heroin, and the total weight of the substance was 31.333 grams. As part of his initial test, Deputy McLouden noted that "[a]ll of the heroin packets appeared the same in color, texture, and packaging." He also selected and tested samples at random and each sample "tested positive for heroin." McLouden did not record the number of grams tested before sending the seized bag to the BCA for further analysis.

Sarah Goldstrand, a forensic scientist at the BCA, examined the 64 individually wrapped packets and noted that all 64 packets appeared similar in size, color, and consistency. Goldstrand used the hypogeometric sampling plan to test the packets, a statistically based randomized-sampling method generally accepted in the scientific community. The hypogeometric sampling plan calculates the required number of test samples based on: (1) the population size of the samples, (2) the statistical portion of positives in the population selected, and (3) the expected confidence level. Relying on this formula, Goldstrand determined that 19 samples must be tested, and she used a random number generator to select the 19 samples. All 19 of the selected samples tested positive for heroin; the total weight of the samples tested was 9.066 grams.

Goldstrand testified at Carpenter's trial that the hypogeometric sampling plan supports a 95% confidence rate that 90% of the total population size contains the same substance as the 19 test samples. Based on Goldstrand's testimony, the district court concluded that, of the 31.333 grams of the substance seized, at least 28.1997 grams consisted of heroin—28.17 grams is 90% of the total sample. Because 28.1997 grams is above the 25-gram statutory amount required for first-degree aiding and abetting the possession of a controlled substance, and the ten-gram statutory amount required for first-degree aiding and abetting the sale of a controlled substance, the district court found Carpenter guilty of both charges. The district court later sentenced Carpenter to 86 months in prison for first-degree sale of a controlled substance.

Four days after the sentencing hearing, Carpenter filed a motion for a judgment of acquittal. Relying on *State v. Robinson*, 517 N.W.2d 336 (Minn. 1994), Carpenter argued that the state failed to prove beyond a reasonable doubt that he was in possession of ten or more grams of heroin, as the 19 test samples collectively weighed only 9.066 grams. After reviewing Carpenter's motion, the district court concluded that *Robinson* governs Carpenter's case and explained that, had it considered *Robinson* during trial, "it may very well ... have granted" Carpenter's motion, but applying a narrow reading of rule 26.03, the district court reluctantly concluded that rule 26.03 only authorized it to grant a motion for acquittal following a *jury* trial. Because the court convicted Carpenter following a *court* trial, it denied his motion. The district court upheld Carpenter's 86-month sentence and released Carpenter pending this appeal.

## ANALYSIS

I. **The district court erred by concluding that it is only authorized to grant a motion for acquittal following a jury trial.**

Whether a district court is authorized to grant a post-verdict motion for a

judgment of acquittal in a court trial is an issue of first impression for this court. The interpretation of the Minnesota Rules of Criminal Procedure is a question of law that we review de novo. *State v. Olson*, 884 N.W.2d 395, 397 (Minn. 2016) (citation omitted).

Minnesota Rule of Criminal Procedure 26.03, subdivision 18, section 3, provides that after a verdict is entered or the jury is discharged:

(a) If the jury returns a verdict of guilty or is discharged without verdict, a motion for a judgment of acquittal may be brought within 15 days after the jury is discharged or within any further time as the court may fix during the 15-day period.

(b) If the jury finds aggravating factors, the defendant may move the court to determine that the evidence is insufficient to sustain them.

(c) If the court grants the defendant's motion for a judgment of acquittal or determines that the evidence is insufficient to sustain the aggravating factors, the court must make written findings stating the reasons for the order.

(d) If no verdict is returned, the court may enter judgment of acquittal. If no finding of an aggravating factor is made, the court may enter a finding of insufficient evidence to support an aggravated sentence.

(e) A motion for a judgment of acquittal or that the evidence is insufficient to sustain an aggravated sentence is not barred by a failure to move before deliberations.

■ Applying a narrow reading of this section, the district court concluded that it lacked authority to grant a judgment of acquittal because judgments of acquittal expressly apply only to jury trials, not court trials. When this subdivision is read in isolation, we agree that the plain language of the rule suggests that a district court's authority to enter a post-verdict judgment of acquittal is limited to jury trials. But the criminal procedural rules must be "read as a whole and each section . . . interpreted in light of the surrounding sections to avoid conflicting interpretations." *State v. Dahlin*, 753 N.W.2d 300, 306 (Minn. 2008) (quotation omitted); *see Olson*, 884 N.W.2d at 398 (holding that the plain language of the Minnesota Rules of Criminal Procedure must be read in context, as a whole).

■ Rule 1 of the Minnesota Rules of Criminal Procedure provides that "[t]hese rules govern the procedure in prosecutions for felonies, gross misdemeanors, misdemeanors, and petty misdemeanors," without distinguishing between procedures in court trials and in jury trials. Minn. R. Crim. P. 1.01. Moreover, rule 1 clearly and unambiguously states that these rules are "intended to provide a just determination of criminal proceedings, and ensure a simple and fair procedure that eliminates unjustified expense and delay." Minn. R. Crim. P. 1.02. In accordance with rule 1, Minnesota Rule of Criminal Procedure 26.03 is titled "Procedures During Trial" and similarly draws no distinction between court and jury trials. *See* Minn. R. Crim. P. 26.03. Because the rules of criminal procedure are designed to establish procedures for all trials, and because the purpose and intent of the rules is to ensure a simple process that eliminates unnecessary expense and delay, we conclude Minnesota Rule of Criminal Procedure 26.03, subdivision 18, section 3, applies to both court and jury trials.

Our analysis here is guided by the Minnesota Supreme Court's interpretation

of another section of rule 26.03, subdivision 18. In *State v. Slaughter*, the supreme court determined that section 1 of the rule at issue here applies equally to court and jury trials.[1] 691 N.W.2d 70, 74-75 (Minn. 2005). The supreme court noted that "[a] motion for acquittal is procedurally equivalent to a motion for a directed verdict." *Id.* at 74. Focusing on the similarity of the tests established for granting motions for acquittal and for directed verdict, the supreme court determined that the district court hearing a motion for acquittal must decide "whether the evidence is sufficient to present a fact question for the jury's determination, after viewing the evidence and all resulting inferences in favor of the state." *Id.* at 74-75. Accordingly, the supreme court concluded that a district court may deny a pre-deliberation, pre-verdict motion for a judgment of acquittal if "it determine[s] that the state's evidence, when viewed in the light most favorable to the state, was sufficient to sustain a conviction." *Id.* at 75. The supreme court clarified that section 1 applies equally to all trials because it "makes no distinction between a jury trial and a bench trial." *Id.*

Although we recognize that the plain language of sections 3(a) and (b) of subdivision 18 refer specifically to jury trials, we must read the rules of criminal procedure as a whole. *See Dahlin*, 753 N.W.2d at 306. Read in context, section 3 of subdivision 18 is properly understood to allow a district court to grant or deny a motion to acquit before deliberations or after a verdict is entered in both court and jury trials.[2] The district court erred when it concluded that it lacked authority to grant Carpenter's motion for judgment of acquittal.

---

1. Minn. R. Crim. P. 26.03, subd. 18(1), titled "Before Deliberations" states: "At the close of evidence for either party, the defendant may move for, or the court on its own may order, a judgment of acquittal on one or more of the charges if the evidence is insufficient to sustain a conviction." At the time the Minnesota Supreme Court determined *Slaughter*, this provision of the rule was contained in subdivision 17. *Slaughter*, 691 N.W.2d at 74-75. The rule was renumbered and the language was altered as a result of the 2010 revisions; we, however, conclude that these revisions did not alter the predominant intent and effect of the rule.

2. For the sake of clarity, we note that a post-verdict motion for a judgment of acquittal due to factual insufficiency under rule 26.03, subdivision 18, section 3, and a post-verdict motion to vacate judgment for legal insufficiency under Minn. R. Crim. P. 26.04, subd. 1(1)7, are necessary and legally distinct procedures. A defendant may bring a post-verdict motion for judgment of acquittal under rule 26.03 when the state's evidence and the district court's factual findings are insufficient to justify the state's charges. *See* Minn. R. Crim. P. 26.03, subd. 18 (3). The district court, however, must vacate judgment on a post-verdict motion of a defendant under rule 26.04, subdivision 3, when the "document does not charge an offense, or if the court did not have jurisdiction over the offense charged." *See also State v. Colvin*, 645 N.W.2d 449, 456 (Minn. 2002) (holding that judgment must be vacated when stipulated facts fail to establish the legal basis required for a burglary charge). Our analysis is further supported by subdivision 1(1)7 of rule 26.04, which states that a district court may grant a new trial on a defendant's post-verdict motion when "[a] verdict or finding of guilty . . . is not justified by the evidence and contrary to law." This provision refers to legal insufficiencies, not factual insufficiencies. To interpret this provision otherwise would violate the United States Supreme Court's holding in *Burks v. United States* that the Double Jeopardy Clause precludes a second trial once a reviewing court has determined the evidence presented is factually insufficient. 437 U.S. 1, 16-18, 98 S.Ct. 2141, 2150-51, 57 L.Ed.2d 1 (1978). To afford the government a proverbial "second bite at the apple," where it failed to supply sufficient evidence in the first trial, would contravene the purpose of the Double Jeopardy Clause, which was established to prohibit successive trials. *Id.* at 11-12, 17, 98 S.Ct. at 2147, 2150.

## II. The state failed to prove beyond a reasonable doubt that Carpenter possessed the statutory threshold amount of heroin.

Citing *Robinson*, 517 N.W.2d at 336, appellant argues that the state did not prove the weight required for first-degree sale. In *Robinson*, the Minnesota Supreme Court addressed the issue of random sample testing. The defendant in *Robinson* was charged and convicted of one count of first-degree sale of a controlled substance, and one count of second-degree possession of a controlled substance, after police seized a plastic bag containing 13 individually wrapped packets of what appeared to be cocaine. *Id.* at 337-38. At trial, a public health chemist testified that she emptied 6 or 7 of the 13 packets, weighing 8.99 grams, into a container and tested samples of that mixture. She thereby determined that 87.6% of the mixture was cocaine. *Id.* at 338. Reviewing the sufficiency of the evidence, the supreme court concluded that "random sampling in a case such as this one is insufficient to establish the total weight required of the mixture containing a controlled substance" because:

> [t]he weight of the mixture is an essential element of the offense charged; like every other essential element, it must be proven by the state and proven beyond a reasonable doubt. "Protocol" notwithstanding, there seems to be no good reason why a sufficient quantity of the mixture should not be scientifically tested so as to establish beyond a reasonable doubt an essential element of the crime charged.

The trouble with determining the required weight of a mixture by extrapolation from random samples is that the extrapolation does not take into account the fact that, in the case of substances not homogeneously packaged, drug dealers are known to substitute placebos for the real thing. Indeed, substitution is apparently common enough that it has achieved a criminal status of its own. *Id.* at 339 (citations omitted). The supreme court remarked, however, that "[t]here may be instances where the seized material consists of pills or tablets where the individual items are so alike and the risk of benign substitutes so unlikely that random testing may legitimately permit an inference beyond a reasonable doubt that the requisite weight of the whole mixture is established." *Id.* at 340. But the court clarified that this was not the case in *Robinson*: random sampling of "individually wrapped plastic packets with some amount of some kind of white substance in each, whose packaging gives no assurance that the same substance was wrapped in each packet," was insufficient to establish that the mixture contained the total weight required to establish the charged offense. *Id.* Accordingly, the supreme court set aside the defendant's first-degree controlled-substance charge and remanded to the district court for sentencing for second-degree sale of a controlled substance. *Id.*

Here the state contends that the random testing of the 19 packets, when considered with the circumstantial evidence, is sufficient to prove beyond a reasonable doubt that the weight of the mixture containing heroin equaled or exceeded 25 grams. The state asserts that the supporting circumstantial evidence includes: (1) that the drugs were individually wrapped in plastic packets and one large plastic bag contained all of the packets: (2) that the weight of each packet was consistent with an amount typically sold for $10-20; (3) that the substance appeared similar in color and texture to heroin; and (4) that the substance was seized while the Hennepin County Sheriff's Office was conducting surveillance based on a reliable informant's tip that Carpenter's accomplice was en-

gaged in drug activity. The district court, however, concluded that *Robinson* controls; and we agree. Like *Robinson*, the state failed to test the statutory weight of the seized substance; the substance at issue here was wrapped in 64 individual packets; the packaging gave no assurance that the same kind of substance was contained in each packet; and the substance seized was not so alike that the risk of benign substitutes was improbable. Thus, extrapolation from random testing is not permissible in this case.

■ The state nevertheless argues that *Robinson* is readily distinguishable and that this court ought to abide by the Minnesota Supreme Court's decisions in *State v. Traxler*, 583 N.W.2d 556 (Minn. 1998), and *State v. Olhausen,* 681 N.W.2d 21 (Minn. 2004). The state contends that the supreme court's holding in *Robinson* is inapposite because: (1) *Robinson* did not prohibit hypogeometric testing, and (2) *Robinson* prohibited only random testing of a lesser amount when the samples are mixed and tested collectively.[3] We disagree. While we acknowledge that *Robinson* does not prohibit particular testing methods, the state's contentions misstate the principle articulated in *Robinson*: when weight is an essential element of an offense, and there is no evidence that the same substance is contained in each package, random testing of a lesser weight of individually wrapped samples containing an unknown substance is insufficient to establish the total weight required.

The state also asserts that because the supreme court did not adopt a per se rule

requiring detailed testing of all disputed evidence in *Robinson*, extrapolation from random samples is appropriate here. In *Traxler*, the Minnesota Supreme Court clarified that " *Robinson* does not, however, preclude the state from establishing the weight of a mixture through extrapolation from random samples in every controlled substance case." 583 N.W.2d at 561. Indeed, the supreme court reiterated that "there may be instances when the controlled substance seized is such that extrapolation of weight through random testing would be legitimate." *Id.* And the supreme court noted the factors to consider when making this determination: "the composition and form of the substance, the type of substance involved, and the circumstances in which the substance is found or seized." *Id.*

But unlike *Traxler*, extrapolation of weight through random testing is inappropriate here. The substance seized in this case is not the kind of substance whose risk of substitutes is so benign that extrapolation is permissible. Moreover, the substance in this case was seized during surveillance of potential "hand-to-hand drug transactions." An inference in favor of extrapolation "is countered by the evidence that at times a dealer will package a [controlled-substance] substitute," as "drug dealers are known to substitute placebos for the real thing." *Robinson*, 517 N.W.2d at 339.

Finally, the state also argues that it may prove the weight or existence of a controlled substance based solely on circum-

---

**3.** The state also argues that unlike the scientist in *Robinson*, whose expert testimony was challenged at trial, Goldstrand was not cross-examined by Carpenter and her testimony was not otherwise challenged. Because Carpenter raised this argument for the first time in his motion for acquittal, and not during cross-examination, the state contends that

Carpenter may not challenge the BCA's methodology on appeal. Rule 26.03, subdivision 18(3)(e), unambiguously states that "[a] motion for a judgment of acquittal or that the evidence is insufficient to sustain an aggravated sentence is not barred by a failure to move before deliberations." Thus, this argument is unavailing.

stantial evidence. *See Olhausen*, 681 N.W.2d at 21. In *Olhausen*, the supreme court held that when the defendant discards the "alleged controlled substance, thereby preventing the state from performing scientific tests," the state may prove attempted sale and possession of a controlled substance by circumstantial evidence. *Id.* at 28. Unlike the defendant in *Olhausen*, Carpenter did not prevent the state from testing the alleged controlled substance.[4] After review of the record, we conclude that the state has failed to offer any good reason why it failed to test the amount corresponding to the statutory charge. *See Robinson*, 517 N.W.2d at 339.

On appeal, we may "reduce the conviction to a lesser included offense or to an offense of lesser degree, as the case may require. If [we] reduce[ ] the conviction, [we] must remand for resentencing." Minn. R. Crim. P. 28.02, subd. 12(c). Because we determine the factual basis underlying Carpenter's conviction does not support a conviction of a first-degree controlled-substance crime, we reverse, reduce Carpenter's first-degree sale of a controlled-substance charge under Minnesota Statutes section 152.021, subdivision 1(3) (2016) (ten grams or more) to second-degree sale of a controlled substance under Minnesota Statutes section 152.022, subdivision 1(3) (2016) (three grams or more), and remand for resentencing.

### III. The district court did not violate Carpenter's right to present a complete defense by precluding the testimony of D.H.

 Finally, Carpenter contends that the district court abused its discretion by precluding the testimony of D.H., without making an adequate determination as to whether D.H. would validly invoke his privilege against self-incrimination. The Fifth Amendment of the United States Constitution and article 1, section 7 of the Minnesota Constitution guarantee that "[n]o person shall be ... compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; Minn. Const. art. I, § 7. It is well established that a witness "may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." *Mitchell v. United States*, 526 U.S. 314, 321, 119 S.Ct. 1307, 1311-12, 143 L.Ed.2d 424 (1999). The illogic of allowing self-selected testimony is apparent: "A witness may not pick and choose what aspects of a particular subject to discuss without casting doubt on the trustworthiness of the statements and diminishing the integrity of the factual inquiry." *Id.* at 322, 119 S.Ct. at 1312. Consequently, selective invocations of the privilege are invalid and result in waiver. *Id.*, 119 S.Ct. at 1313. Any contrary rule "would open the way to distortion of facts by permitting a witness to select any stopping place in the testimony." *Id.*, 119 S.Ct. at 1312 (quoting *Rogers v. United States*, 340 U.S. 367, 371, 71 S.Ct. 438, 438, 95 L.Ed. 344 (1951)). Thus, district courts must not require the witness "to prove the hazard [of incrimination] in the sense in which a claim is usually required to be established in court," as doing so would compel the witness to "surrender the very protection which the privilege is designed to guarantee." *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

---

4. Indeed, here, the state had control of the drugs from June 2014, when Deputy Hughes seized them from appellant, until trial began in July 2015. There is no evidence in the record that anything prevented the state from testing the statutory amount—which, in this case, would have involved testing less than one gram more.

Consequently, district courts are obligated to decide whether a claim of privilege against self-incrimination is valid; and in making this decision, a district court is afforded "broad discretion." *State v. Moose*, 266 N.W.2d 521, 525 (Minn. 1978). If after evaluating this claim of privilege, a district court concludes that the claim is valid, the privilege against self-incrimination takes precedence over the right to compulsory process. *Id.*

In the instant case, Carpenter notified the district court that he intended to call his accomplice, D.H., as a witness at trial. Prior to Carpenter's trial, D.H. pleaded guilty to a state charge of first-degree possession. Because the time afforded to D.H. to file an appeal had not expired at the time of Carpenter's trial, D.H. retained the right to invoke his Fifth Amendment privilege against self-incrimination. At the evidentiary hearing, the district court called D.H. to the stand and the following conversation ensued:

THE COURT: [D.H.] have you had a chance to talk to ... the appointed lawyer ...?

D.H.: Absolutely.

THE COURT: Okay. And you feel that she's advised you accurately and you're satisfied with what she's—with her conversations with you?

D.H.: Absolutely.

THE COURT: Okay. And you talked about all your Fifth Amendment Rights to remain silent and whether you want to waive them or whether you don't want to waive them. She talked to you about all that stuff?

D.H.: Yes.

THE COURT: All right. Do you have any questions about any of the rights that you would be giving up if you decide to testify?

D.H.: No.

THE COURT: You have no questions?

D.H.: No.

THE COURT: All right. And what do you want to do?

D.H.: Plead the Fifth.

THE COURT: You want to plead the Fifth?

D.H.: Yep.

THE COURT: So you do not want to testify?

D.H.: Nope.

The district court therefore concluded that D.H. invoked his privilege against self-incrimination, and properly refused to order D.H. to take the stand to testify. Because D.H. wholly and unequivocally invoked his right against self-incrimination, and because the district court is not required to compel a witness to take the stand after proper invocation, we conclude that the district court did not abuse its discretion by refusing to order D.H. take the stand.

## DECISION

First, when the state fails to meet its burden of proof, a district court is authorized to decide a post-verdict motion to acquit under Minnesota Rule of Criminal Procedure 26.03, subdivision 18, section 3, whether the case is tried to a court or a jury. And second, in a prosecution for possession of a controlled substance, where the district court properly determines that *Robinson* controls, the state must prove beyond a reasonable doubt that a defendant possessed the statutory amount of the controlled substance required for conviction. Because the state had control of the alleged substance, there is no evidence in the record that the state was prevented from testing the statutory amount, and appellant filed a post-verdict motion for a judgment of acquittal, the district court erred by concluding that it lacked authority to grant appellant's motion. According-

ly, we affirm the district court's refusal to compel D.H. to testify, reverse the district court's determination that it did not have the authority to decide appellant's post-verdict motion for acquittal, reduce Carpenter's conviction of a first-degree controlled-substance crime to a second-degree controlled-substance crime, and remand for resentencing under Minnesota Statutes section 152.022, subdivision 1.

**Affirmed in part, reversed in part, and remanded.**